[Civ. No. 19015. First Dist., Div. One. June 20, 1960.]

MRS. ALICIA STARK, Appellant, v. COUNTY OF ALAMEDA, Respondent.

Wegner & Robson and Arthur Lyle Robson for Appellant.

J. F. Coakley, District Attorney, R. Robert Hunter, Chief Assistant District Attorney, and William S. Coit, Deputy District Attorney, for Respondent.

TOBRINER, J.—Appellant appeals from a denial by the superior court of her application for an order freeing petitioner from any obligation to support her mother upon the ground she was "abandoned" by her mother. The relationship of parent and child is so deep and fundamental in our society that we do not lightly terminate its legal effects. Abandonment calls for an intent to sever and disrupt this rooted relation, an intent, accompanied by actual desertion, that must be either declared or manifested in overt acts. We find substantial evidence to uphold the trial court's evident conclusion that neither declaration nor manifestation occurred here.

Pursuant to section 206.7, Civil Code, appellant petitioned the Alameda County Board of Supervisors on February 27, 1959, for an order freeing her from responsibility for the support of Irma Lyon, appellant's mother. The board did not deny the request but failed to act upon it within 30 days; consequently, petitioner, pursuant to section 206.5 of the Civil Code, filed with the superior court an application praying that "the Court issue an ORDER" under that section "freeing petitioner from any obligation to support IRMA LYON." The court permitted the County of Alameda to intervene in the action upon the basis of its complaint in intervention which alleged that, pursuant to section 2224 of the Welfare and Institutions Code, the county had determined that said "IRMA LYON has an adult child, MRS. ALICIA STARK, a responsible relative. . . ." The parties waived findings of fact. The court entered judgment denying the petition.

The factual history and background of the mother's relation with appellant begins with the separation of the mother and father "about four months before . . . [appellant's] birth" in 1920. On April 19, 1921, the following year, the parents were divorced. Three years later the mother volun-

tarily relinquished custody of appellant to the father. As to this relinquishment appellant's mother testified at the trial: "I was advised by my attorney that it would be wise for them to have her [appellant] and her brother. . . . I felt I should under the circumstances. . . . I had had a terrible illness and mentally and physically, I was not really able to care for them."

The evidence indicates that the mother visited appellant approximately three or four times a year during the period of 1924 to 1930. Appellant testified, when she was "about ten" her mother "would pick me up and I think my brother. We would go to her house for a Sunday and she would bring us back." Appellant's mother testified that she visited appellant "very often" between 1924 and 1930; ". . . I saw her and kept as close as I could considering the family she was living with. It was a very difficult thing."

In 1930 the mother cited the husband for contempt for not allowing her the visitation rights to which she was entitled. Those rights were then "fixed . . . so I could take the children out and spend a day with them and enjoy their visits."

The testimony of the witnesses conflicts somewhat as to the visitations during the period from 1930 to 1936. Appellant first testified that she could not recall her mother visiting her when she was a teen-ager but thereafter modified her testimony to the extent that she recalled visits of the mother "on a couple of occasions" when appellant "was thirteen or fourteen." The mother testified as to this period that "there would be times when they [appellant and her brother] wouldn't be well, or one of . . . Mr. Lyon's and my children wouldn't be well, and I couldn't always get away and visit with them as often as I would have liked to, but . . . I visited as often as I possibly could." Appellant's half-brother, Charles Francis Lyon, Jr., stated that during the years "1930, '31, '32, in through there" the mother would bring appellant to his house and "we used to go out to the park and out to the beach and go to a movie and things like that." But "after 1936 or 1937, I didn't see them too much."

When asked the following very significant question, "Mrs. Stark, can you tell the Court any two year period that your mother did not communicate with you before you were sixteen years old?" appellant replied, "I could—I really can't remember."

Regarding the mother's recognition of birthdays and Christmas, appellant testified that between the ages of 3 and 16 she

"never received a birthday card or a Christmas card." The mother said, however, ". . . I always remembered the occasions like that." ". . . I remembered their birthdays." Appellant stated that she "only had one birthday party" in her life and that "was not with" her mother.

As to support, appellant complained that her mother did not "help . . . [appellant] out financially in any way." The mother testified "I was never called upon to support them. . . ." The record shows that the mother remarried and had three children by her second husband.

We analyze these facts, first, in the light of the definition of abandonment and, second, to determine if in that light they constitute substantial evidence to support the judgment of the trial court.

The term "abandonment" is the key concept in the relevant Civil Code, section 206.5. As in effect at the time appellant filed her petition (Stats. 1955, ch. 613, p. 1102, § 1, as amended Stats. 1957, ch. 1557, p. 2916, § 2), it provided that the petition of the person seeking to be exonerated from the obligation of support must allege "that, while he was a minor under 16 years of age, he was abandoned by a parent, and such abandonment continued for a period of two or more years prior to the time such person reached the age of 16 years, and such parent during such period was physically and mentally able to support such person. . . ." We believe that abandonment contemplates an intentional disruption of the parent-child relationship manifested by an actual desertion of the child, concomitant with an express declaration to abandon the child or by conduct which exhibits such intentional disruption of the relation.

The interpretation of the term in the comparable provisions of section 701, subdivision (a), Welfare and Institutions Code, as to care and custody, aids in determining the meaning of the term here. It is true that section 206.5 does not specifically include "intent" whereas section 701, subdivision (a) does, and that section 701, subdivision (a), further states "failure to provide, or such failure to communicate for the period of one year, shall be presumptive evidence of the intent to abandon." Nevertheless the failure to provide or communicate serves only as *presumptive* evidence and as indicia of the underlying requirement of an *intent* to abandon. Hence decisions passing upon the section and characterizing such intent bear upon our question. In holding a mother did not voluntarily leave a 10-year-old child in the care and custody of the

former husband when such care and custody "was taken . . . from her . . . by order of court" (p. 836) the court in *In re Jones* (1955), 131 Cal.App.2d 831 [281 P.2d 310], offers this definition of abandonment: "One of the things necessary to be shown to constitute abandonment is intent on the part of the parent to abandon the child. (*In re Cordy*, 169 Cal. 150, 151 [146 P. 532, 534].) In order to constitute abandonment there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same." (P. 834.) A number of other cases are to the same effect: *In re Cattalini* (1946), 72 Cal.App.2d 662, 665 [165 P.2d 250]; *Guardianship of Kerns* (1946), 74 Cal.App. 2d 862 [169 P.2d 975].

Appellant's attempt to turn abandonment upon the single test of nonsupport must fail. Contending "[t]he Code section sets forth only one criterion for abandonment. . . . the failure to support a child while physically and mentally able to do so," appellant suggests that the previous support of the child by the parent earns, as a kind of *quid pro quo,* the support of the impecunious parent by the child. But the Legislature enacted no such equation. It exonerated the child from support if (1) he "was abandoned by a parent," (2) "such abandonment continued for a period of two or more years" and (3) "such parent during such period was physically and mentally able to support such person." The abandonment is thus not dependent upon failure to support; indeed, quite the contrary, abandonment is qualified by the third condition, ability of the parent to support the child. The Legislature did not pass a statute which would produce so incongruous a result as to rest the child's liability for support of a parent upon the parent's past support of the child, when, in many cases, the parent is relieved of the liability of child support by a court decree which places that obligation upon the other parent.

The decisions, as well as the attorney general, have recognized that nonsupport is not coincident with abandonment. Thus, under the cited section 701, subdivision (a), of the Welfare and Institutions Code, which expressly declares nonsupport for a given period presumptive evidence of abandonment, the cases have held the fact of nonsupport in itself does not constitute abandonment (*In re Cattalini, supra* (1946), 72 Cal.App.2d 662; *Guardianship of Kerns, supra* (1946), 74 Cal.App.2d 862). As to the bearing of nonsupport

on abandonment the attorney general has declared ". . . if there were no duty upon the mother to furnish support, the failure to do so would not indicate abandonment. Section 208 of the Civil Code provides that 'A parent is not bound to compensate the other parent, . . . for the voluntary support of his child, without an agreement for compensation, . . .' And then again, the divorce decree itself may possibly provide that the father should support the child. Failure of the mother to communicate with the child during the two-year period in question may be evidence of the intent to abandon, and may possibly be better evidence of this intent than the mere failure to support." (30 Ops. Atty. Gen. (1957), 223, 227.)

Apparently deserting her proposition that the Code sets forth the single criterion of nonsupport for "abandonment," appellant asserts a second, and contradictory, contention that, "A child is 'abandoned' within the provisions of Civil Code, section 206.5, when the parent has committed such acts of abrogation of parental responsibility as to make it inequitable to force the child to contribute towards the parent's support." This second contention mistakes the issue. Specifically, we seek to define what constitutes "abandonment" within the meaning of the statute. We cannot begin with a judgment as to the inequitability of a forced contribution and from that assumption determine that the child has been "abandoned." Appellant's rationale for this construction of the statute that, "The obvious attempt of the legislature was to equate the moral obligation to support a parent with the legal duty to support said parent" overlooks the legislative standard for exoneration. The courts cannot substitute their various judgments of the "equities" in the place of the enacted test.

Appellant's third contention that, "Irma Lyon has failed to support appellant for the required period and further has committed such acts of abrogation of parental responsibility as to make it inequitable to burden appellant with reimbursement to the county," merely recapitulates appellant's first two contentions, which have been discussed *supra*.

We turn to the final task of determining whether, in the light of the above definition of abandonment, substantial evidence in this record supports the judgment. Findings of fact having been waived, we search the record only to determine if substantial evidence supports the judgment (*Price v. Price* (1952), 114 Cal.App.2d 176, 179 [249 P.2d 841].) Furthermore, in decisions which construe Welfare and In-

stitutions Code, section 701, subdivision (a), the courts specifically hold that the issue of intent to abandon constitutes one of fact for the trial court. (*In re Welch* (1951), 108 Cal. App.2d 466, 473 [238 P.2d 1031]. To the same effect *In re Sanders* (1948), 88 Cal.App.2d 251 [198 P.2d 523].)

There can be no doubt but that substantial evidence upholds the ruling of the trial court. Certainly the facts do not show on the part of the mother any intentional disruption of the parent-child relationship manifested by an actual desertion of the child, concomitant with an express declaration to abandon the child or by conduct which exhibits such intentional disruption of the relationship. Whatever the interval between the mother's visits, the visits occurred. The proof fails to show any two year period, prior to the time when appellant reached the age of 16, when visitations entirely ceased. The record likewise fails to show that the mother neglected completely observance of holidays. Any attempt to show abandonment because of nonsupport fails in the face of an omission to demand such support or to show the mother's ability to provide it. The requirements implicit in the legal dissolution of so rooted a relationship as parent and child signally fail here.

The mother's abandonment of her child is not to be easily concluded; the evidence sustains the trial court in finding that it did not occur in this instance.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.