[Civ. No. 19325.   First Dist., Div. One.   Mar. 6, 1961.]

HELEN C. JOHNS et al., Appellants, v. MARY A. KLEIN-KOPF, Defendant; COUNTY OF ALAMEDA, Intervener and Respondent.

George & Dillon for Appellants.

J. F. Coakley, District Attorney, and John J. Fox, Deputy District Attorney, for Intervener and Respondent.

TOBRINER, J.—Claiming that they were "abandoned" by their mother, appellants appeal from a denial by the Superior Court of Alameda County of their application for an order freeing them from any obligation to support her. Appellants contend that the evidence demonstrates an abandonment and that respondent cannot rely upon the deposition of the mother which furnishes persuasive testimony against it. We believe that the appeal must fail; substantial evidence upholds the trial court's conclusion that no abandonment occurred, and appellants cannot avoid the impact of the mother's deposition.

This litigation follows the usual pattern of proceedings for release from the responsibility of support of a parent. Pursuant to section 206.7 of the Civil Code, appellants petitioned the Alameda County Board of Supervisors for an order freeing them from responsibility for the support of their mother, Mary A. Kleinkopf. The board having failed to act on the request within 30 days, appellants, pursuant to section 206.5 of the Civil Code, filed with the superior court an application for the sought order. The court granted the county of Alameda permission to intervene. After denying a motion for a new trial on the grounds of insufficiency of the evidence, that the decision is against the law and errors in law occurring at the trial, the court entered judgment denying the petition.

The history of the interrelations of the mother and the children begins, for the purposes of this litigation, with the separation of the parents in 1903, when appellants were small children, Helen being aged 3 and Howard 5. In 1904, the mother obtained a final divorce on the grounds of cruel and

inhuman treatment, the court awarding custody of appellants to their father and omitting any reference to support requirements. During the two years immediately following the separation the children lived on a ranch near Marysville. Then in the fall of 1905 they moved to Oakland where they lived with their grandmother and aunt, the father's sister. Helen never again lived with her mother. From 1908 to 1910 Howard lived with his father; thereafter, until he entered the Armed Forces in World War I, he lived with his mother.

Civil Code section 206.5 specifies the statutory provision as to abandonment. The child must show that "while he was a minor, he was abandoned by such parent, and such abandonment continued for a period of two or more years prior to the time such person reached the age of 18 years, and such parent during such period was physically and mentally able to support such person. . . ." ▉ We have characterized abandonment in our decision in *Stark* v. *County of Alameda* (1960), 182 Cal.App.2d 20 [5 Cal.Rptr. 839], in the following language: "We believe that abandonment contemplates an intentional disruption of the parent-child relationship manifested by an actual desertion of the child, concomitant with an express declaration to abandon the child or by conduct which exhibits such intentional disruption of the relation." (P. 23.)

▉ Since the trial court found that Mrs. Kleinkopf had not abandoned the two children our task becomes the familiar one of determining whether substantial evidence in the record supports the judgment. Again, as in *Stark,* "Findings of fact having been waived, we search the record only to determine if substantial evidence supports the judgment." (P. 25.)

▉ Indeed, as we pointed out there, the courts have specifically held "that the issue of intent to abandon constitutes one of fact for the trial court." (P. 26.) Appellants' threefold effort to upset the judgment rests upon contentions that the children respectively were abandoned for designated two-year periods, that the instant case can be distinguished from *Stark,* and that the court based its decision upon facts set out in the Kleinkopf deposition although they were improperly deprived of the opportunity to object to the admissibility of portions of the deposition. We shall consider each of these contentions hereinafter.

▉ Appellants contend that the mother abandoned her son, Howard, during the period from 1903 to 1910 and that in that interval there was at least a two-year term during

which the mother did not visit Howard. Appellants' chief claim as to the abandonment of the daughter, Helen, rests in the period from 1910 to 1918.

Turning to the alleged abandonment of the son during 1903 to 1910, appellants do no more than disclose a conflict of evidence which has been resolved by the trial court. Howard himself testified that after 1910 he "lived with . . . [his] mother"; consequently he does not "claim any abandonment after 1910." But his testimony of his relationship with his mother before that time is extremely vague and diffuse. These early years, the first 12 years of Howard's life, which are necessarily difficult of recall in any event, are dimmed here by the lapse of a half century. Howard's testimony does not recreate a picture of the mother-son relationship of that time; the witness cannot clearly say when he saw his mother, if at all; his "best recollection" is that in 1910 he lived with his mother at the "Haller House," an apartment house, which she managed; the testimony utterly fails to show an abandonment by the mother as a matter of law.

Moreover, the son's testimony is contradicted by Mrs. Beal and by the deposition of the mother. Mrs. Beal testified that in 1904 the mother visited her children, at intervals of "sometimes maybe it would be three or four weeks, maybe it would be a little longer; maybe it would be less than that." During the years from 1903 until the time when Howard went to live with his mother at the "Haller House," Mrs. Beal accompanied the mother upon frequent visits to the children; "She used to always take them a gift when she went to see them"; she "remembered them at Christmas and on their birthday." Helen denies Mrs. Beal's account of these events; Howard has "absolutely no recollection of her ever coming [with his mother] to visit us," but at the most we have here a conflict of evidence, and, at the least, the recollections of the activities of an adult as opposed to shadowed memories of early childhood.

The daughter, Helen, contends the mother abandoned her during the period from 1912 to 1928 when Helen claims the mother resided in Hollister. Helen testified: "I did see her once in Hollister and she was in Hollister until after 1918 and I saw her once in that time." Helen's version of the facts directly conflicts with that of her mother, who flatly states, "There never was a period of two years that I didn't see those children. I saw them every three months or less." While at the oral argument appellants contended that this statement

did not include the period of Mrs. Kleinkopf's residence at Livermore, the statement contains no such limitation. The trial court obviously read no such restriction in it. Mrs. Beal's testimony in general corroborates it. All of these elements compose conflicts in the evidence, and these were resolved by the trial court, leaving nothing more on this score to be adjudicated by this court.

Turning to appellants' theory that the Stark case does not apply, we note that they primarily contend that while in *Stark* no two-year period of failure to communicate occurred, here "both appellants claim a failure to communicate for the two years from 1903 to 1905." Again we point out that the record discloses substantial evidence of communication in those years and that we are bound on that point by the trial court's resolution of the conflict. As a second distinction appellants urge that *Stark* does not indicate that the mother "voluntarily" gave up the children to the father whereas that relinquishment did occur here. *Stark*, however, points out that, after the divorce, "[t]hree years later the mother voluntarily relinquished custody of appellant to the father," because she believed she was not " 'really able to care for them.' " (Pp. 21-22.) A final claimed distinction of *Stark* that there the mother continued to visit the children whereas here two-year lapses occurred in such visitation, reargues the question of evidence which we have hereinabove discussed. Appellants fail to avoid the ruling of *Stark* and particularly its reasoning that nonsupport is not in itself coincident with abandonment.

Appellants' final point rests upon the use of the Kleinkopf deposition; they urge that they improperly lost any opportunity to object to inadmissible testimony within it. We do not believe, however, the incident of its introduction supports the contention. Appellants point out that they initially sought to read portions of another deposition, that of Herbert M. Kupser, who is not a party to the litigation. Because of "respondent's objections to the reading of the Kupser deposition," according to appellants, they introduced the entire deposition into evidence. By analogy they then offered the Kleinkopf deposition "under [Code Civ. Proc.] section 2055 as an adverse witness." Respondent made no objection to the introduction and the court admitted the deposition. Appellants claim that "respondent made no attempt to adopt the testimony of witness Kleinkopf into its case . . . [and] [t]hus, appellants had no opportunity to object to the . . . irrelevant,

immaterial and incompetent matter'' which was contained within it. Appellants evidently contend that it was incumbent upon respondent to ''adopt'' the content of the Kleinkopf deposition, but they cite neither authority, rule, nor case to sustain them. In view of the specific and unquestioned offer of the deposition by appellants and its admission thereupon by the court, we are unable to find any error whatsoever in the record as to this matter.

We recognize that the legal problem we ponder is but one aspect of a basic dilemma of the aged. The needy parent who cannot obtain support from legally responsible children must receive public care, and it is argued that in order to avoid the family conflict which we see here, the state should assume a share of the burden even greater than it discharges today. One of the deepest problems of our society lies in the reconciliation of the state's provision for welfare care to those who need it with the preservation of individual responsibility by those who should honor it. We call attention to the interesting discussion of Friedmann, ''Law in a Changing Society,'' which concludes, ''Here, as in other fields, only a combination of public and private responsibilities can create conditions that are in accordance with contemporary social needs.'' (P. 260.)

The record, here, shows no reason for the avoidance of the individual appellants' responsibility to their mother. This is no case for the shifting of that liability to society.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.