[S. F. No. 7039. Department One.—January 22, 1915.]

## In Re FLORENCE CORDY, an Abandoned Child.

PARENT AND CHILD—ABANDONMENT OF CHILD—ELEMENTS NECESSARY TO ESTABLISH ABANDONMENT—CASES COGNIZABLE IN JUVENILE COURT.— The provision of section 224 of the Civil Code that "any child left in the care and custody of another by its parent or parents, without any provision for its support, for the period of one year, may after such notice to the parent or parents residing within the state, and to such other relatives of said child residing within the county, as the court shall require, be determined by order of the juvenile court of the county in which said child was so left to be an abandoned child within the terms of this section," does not state all of the elements necessary to constitute abandonment, but only defines the circumstances under which the juvenile court can take charge of cases of that kind, and determine whether or not there has been an abandonment.

ID.—INTENT OF PARENT TO ABANDON ESSENTIAL TO ESTABLISH ABANDONMENT.—One of the things necessary to be shown to constitute abandonment is intent on the part of the parent to abandon the child. The evidence in this case does not show such intent.

ID.—EVIDENCE OF INTENT—DECLARATION OF PARENT.—If the circumstances and facts show that the parent—the mother—did have such intent, her declaration to the contrary would not be conslusive in showing lack of intent.

APPEAL from an order of the Superior Court of Alameda County declaring a child to be an abandoned child. T. W. Harris, Judge.

The facts are stated in the opinion rendered by the District Court of Appeal.

R. B. Tappan, and F. A. Berlin, for Appellant.

West & De Journel, and T. C. West, for Respondents.

At the close of the argument Shaw, J., delivered the opinion of the court, Sloss, J., and Lawlor, J., concurring:

The court is of the opinion that the part of section 224 of the Civil Code upon which the respondent relies, does not state all of the elements necessary to constitute abandonment, but only defines the circumstances under which

the juvenile court can take charge of cases of that kind and determine whether or not there has been an abandonment, and that one of the things necessary to be shown to constitute abandonment is intent on the part of the parent to abandon the child. This evidence does not show such intent. It should be said that the lack of intent is not conclusively shown by the bald declaration of the parent—the mother—that she did not intend to abandon the child. If the circumstances and facts show that she did have such intent, her declaration would not be conclusive. The opinion of the district court of appeal is satisfactory to the court, and for the reasons therein given, in addition to those I have just stated, the judgment is reversed.

The following is the opinion of the district court of appeal of the first appellate district, rendered on May 21, 1914, and adopted and approved by the supreme court:

RICHARDS, J.—This is an appeal from on order of the juvenile court of the county of Alameda determining Florence Cordy to be an abandoned child within the meaning of section 224 of the Civil Code. The appeal is prosecuted by the mother of the child.

The practically undisputed facts in the case are these: In the early part of the month of April, 1906, the appellant, Mrs. Annie Cordy, who was then living in San Francisco with her husband and their three children, who were respectively four years, two years, and ten months old, was deserted by her husband, who disappeared, and has not been seen or heard of since. He left his family entirely destitute, and the mother was obliged to turn the children over to the care of a charitable institution and go out to work. This was about three weeks before the earthquake and fire of that year. In that disaster the youngest child, Florence, was badly injured, and was found by its mother in the county hospital. She took the child and nursed it back to health, and then gave it to a Mrs. Zane to keep for her, promising to pay ten dollars a month for its board. The child was soon returned, and was then placed with another friend, who cared for it a few weeks, and it was then transferred by its mother to Mrs. Condiff, because, as the mother says, she was herself poor and destitute. The latter kept the child for a brief period, when a certain Miss

Smith became interested in the welfare of the child, and proposed to Mrs. Condiff to find a home for it. This she did with a family without children named Thurston, who are the respondents here, but upon the understanding apparently that the mother was not to know the whereabouts of the child. When the mother next came to Mrs. Condiff to see her child she was directed to Miss Smith, who declined to tell her where it was, but agreed to have it brought to her rooms occasionally, where the mother might visit it. This arrangement was carried out for some time until Miss Smith became lax in sending for the child, and finally refused to let the mother come there to visit it, and also refused to inform her where the child could be seen. The mother finally located the child at the home of the Thurstons, which was then in San Francisco, and went there, but was denied permission to see the child. Shortly thereafter the Thurstons removed from the city, and the mother again lost track of her daughter; until, persisting in her search, she finally learned indirectly that the Thurstons were in Berkeley; and going over there and searching through the directory she at length found their address, and went to their home in her endeavor to see the child. Her request was at first refused but was at length yielded to, and the mother for the first time in several years saw her little girl; and also saw that she was in a good home and was being cared for and nurtured in comfort and even luxury. The child did not know her as its mother; and Mrs. Thurston says that after seeing the state of the child she requested that it should never be told that she was its mother. This Mrs. Cordy denies; but even if true it is only to be taken as another example of the self-effacement of mother love. She was presently asked to consent to the Thurston's adoption of the child, and at first did so, but on the next day retracted her consent and refused to sign the adoption papers; however, finding that the Thurstons were willing and anxious to keep the little girl and that it would wring their hearts, as Mrs. Thurston said, to let it go away; and being herself still very poor and sick and destitute and without a home, she left the child with the Thurstons, with the understanding that she could occasionally come and see it. This she did for about three years, when, her financial state improving through her own labors and those of her two elder children, whom she had managed to reclaim, she concluded that she would reunite her family;

and hence went to the Thurstons with the request that they deliver her the child. This they refused to do, and a legal struggle for the possession of the child was begun on both sides, the mother applying for a writ of *habeas corpus*, and the Thurstons instituting adoption proceedings, and in aid thereof petitioning the juvenile court to have Florence Cordy declared to be an abandoned child. It is from the order therein made in their favor that this appeal has been taken.

In none of the proceedings instituted in relation to this matter has the moral or maternal quality and fitness of the mother to have the present custody and control of her child restored to her been called into question; nor has her present financial ability to care for the child in a measure, though probably not to the extent or degree of comfort and luxury to which it has been accustomed, been disputed. The sole question presented upon this appeal is as to the construction to be placed on section 224 of the Civil Code which, in so far as it relates to the matter before us, reads as follows: "Any child left in the care and custody of another by its parent or parents, without any provision for its support, for the period of one year, may after such notice to the parent or parents residing within the state and to such other relatives of said child residing within the county as the court shall require, be determined by order of the juvenile court of the county in which said child was so left, to be an abandoned child within the terms of this section." (Civ. Code, sec. 224.)

The first and most pertinent question raised by a reading of this section is the question as to whether it contemplates that a child, left in the care and custody of another without provision for its support, may be declared by the court to be "an abandoned child," without an intent on the part of the parent to abandon it having been shown. The word "abandon" as defined by Webster means "To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation of allegiance or fidelity; to quit; to forsake." (Webster's New International Dictionary.) If this is the usual and ordinary meaning of the word "abandon" then it is not to be construed as having a different signification in the section of the code above quoted, unless the intent

of the legislature to give it another and narrower meaning is to be clearly discerned in the context and from the whole language of the section. This rule of construction should have an especial application to cases of this character, where the natural relation existing between a parent and child is sought to be severed by law. It is the respondent's contention in this case that the language of the section is plain; and that the mere fact of a parent's leaving her child in the care and custody of another for a space of a year without provision for its support, is sufficient in itself to warrant a court in determining that the child is an abandoned child. But this cannot have been the legislative intent, for instances will at once occur to the right thinking and sympathetic mind of the monstrous injustice of the rigid application of such a rule. We think rather that the meaning of the word "abandoned" as above given was intended by the makers of the law to dominate the section, and to cause to be read into every part and provision of it the idea that the acts of the parent in relation to the child enumerated in the statute must have been done with an intent to abandon the child. She must have left it to the care and custody of others with that intention, and a like intent must be shown to underlie her failure, if she has failed, to make provision for its support.

In the case of *Guardianship of Snowball,* 156 Cal. 240, [104 Pac. 444], the supreme court declared that the term "abandon" was to be given the foregoing meaning in construing section 246 of the Civil Code; and in the later case of *Matter of Cozza,* 163 Cal. 514, [Ann. Cas. 1914A, 214, 126 Pac. 161], the same court declared that this word should be given the same meaning in the construction of section 224 of the Civil Code; and further held in the latter case that the power of the court in adoption proceedings to deprive a parent of her child, being in derogation of her natural right to it, and being a special power conferred by the statute, such statute should be strictly construed; "that the law is solicitous toward maintaining the integrity of the natural relation of parent and child; and in adversary proceedings in adoption, where the absolute severance of that relation is sought without the consent and against the protest of the parent, the inclination of the court, as the law contemplates it should be, is in favor of maintaining the natural relation; every intendment should be in favor of the claim of the mother under the evidence;

and if the statute is open to construction and interpretation it should be construed in support of the right of the natural parent." (*Matter of Cozza,* 163 Cal. 514, 524, [Ann. Cas. 1914A, 214, 126 Pac. 165].)

No nicer illustration of the propriety and justice of applying this rule of construction to the section of the code in question need be given than that which is afforded in the case at bar. The evidence shows that this mother, from the time when she was deserted and left destitute by her husband, has persisted in following the movements and watching over the welfare of her child with all the power of which she was capable in her deserted and desperate condition, and with a degree of maternal persistence and solicitude worthy of all commendation; that after years of loss and separation she finally found her child in the care of those who had originally been entrusted with it without her knowledge or consent; that she left her child in the comfortable home of the Thurstons, and that she did not expressly make provision for its support: But the undisputed evidence also shows that at the time she did so they were willing to continue in its care and custody without an agreement for its adoption while she was unable to assume its care and custody because she was working out by the day, and was poor and destitute and sick and had no home. She thus did the only thing she could do, and she did the best thing that her intuitive mother love could have devised for the present welfare of her child. This being so, it is the more rational and humane interpretation of the law that such conduct on the part of a mother under such conditions and compulsion ought not to be construed as evidencing an intent to abandon her offspring, nor deemed to work a forfeiture of her natural right to the care, custody, and responsive affection of her child.

The order is reversed.

Lennon, P. J., and Kerrigan, J., concurred.