[Civ. No. 19968. Second Dist., Div. Three. Apr. 28, 1954.]

Guardianship of DIANE MARSHALL, a Minor. MARGARET DUPRAY, Appellant, v. LORRAINE BRIDGES MARSHALL et al., Respondents.

George L. Hampton for Appellant.

Le Sage & Bowman and Thomas W. Le Sage for Respondents.

VALLÉE, J.—Appeal from an order denying a petition of Margaret Dupray to terminate the guardianship of the person of Diane Marshall, a minor, and for her custody. The order adjudges: 1. Letters of guardianship were issued to Lorraine Bridges Marshall, as guardian of the person of Diane, on March 15, 1950. 2. The petitioner, the natural mother, had abandoned Diane. 3. Lorraine Bridges Marshall, the stepmother, is a fit and proper person to have the custody of Diane, and no grounds for her removal have been proved. 4. It is for the best interests of Diane that Lorraine Marshall remain as her guardian. Margaret Dupray appealed. Her principal contention is that the evidence does not support the finding of abandonment.

On April 30, 1939, Margaret and John R. Marshall, Jr., were married. On January 19, 1941, Diane was born the issue

of the marriage. Later in 1941, Margaret went to live with Theodore Bunn, an entertainer. Sometime in December 1941, John filed an action for divorce against Margaret. On February 18, 1942, an interlocutory decree of divorce was granted and John was given custody of Diane, with the right of reasonable visitation by Margaret. Margaret and John cohabited together as man and wife until sometime in April or the first part of May 1942. Later Margaret resumed living with Bunn. From May 1942 until 1947, Margaret lived with Bunn. With the exception of two months, he supported her during that period of time.

On March 19, 1943, a final decree of divorce between John and Margaret was entered. The final decree adopted the provisions of the interlocutory decree concerning custody and visitation.

When Margaret finally separated from John, Diane was 15 months old. John was about 19 years old. John took Diane to the home of his mother, Mrs. Edna Marshall, in Brentwood, where Diane lived until John married Lorraine on August 28, 1946. From the time that John married Lorraine until the present time, Diane has been in the custody of Lorraine. John had told Margaret that Diane was at Edna's home. Margaret knew where Edna lived; she lived at 235 Homewood Road, Brentwood. Prior to the divorce, Margaret had visited at this home ''many, many times.''

During the period that Diane lived with her grandmother, Margaret did not write or inquire of Edna concerning Diane. In 1946, John took Margaret to visit Diane at his mother's home in Brentwood ''of which he had been wanting to do.'' Margaret did not tell Diane she was her mother. From 1942 to the time of trial, Margaret has been continuously a resident of the county of Los Angeles. At no time during this period did she communicate with Diane or provide for her welfare, except on that one occasion in 1946. She never sent cards nor gifts to her on her birthdays or at Christmas.

From 1942 to 1945, John served in the United States Army and Margaret knew it. He was absent from the Los Angeles area for one year, during which time he was eight months in England. John did not correspond with Margaret while he was overseas. At no time during this period did Margaret visit or attempt to communicate with Diane. On September 9, 1947, Margaret married her present husband, John Dupray.

On January 27, 1950, John Marshall committed suicide. He

stated in his will that Lorraine should be appointed guardian of the person of Diane.

On March 15, 1950, letters of guardianship of the person of Diane were issued to Lorraine. In May 1950, Margaret filed a petition to revoke the letters of guardianship issued to Lorraine. This petition was not heard. In June 1952, she filed the present petition.

Although Margaret had filed her first petition in May 1950, she did not send cards or gifts to Diane at Christmas in either 1950 or 1951, nor did she make any effort to see her.

Margaret claims she never intended to abandon Diane: the whereabouts of Diane were concealed from her; she was kept in a state of terror; John threatened to hurt her and her minor children (she has two children by Dupray), to smear her name and reputation, and make Diane hate her; she "always" wanted to see Diane and begged John to allow her to visit her; she believed it was impossible for her to enforce her rights of visitation.

Section 1409 of the Probate Code provides: "A parent who knowingly or wilfully abandons or, having the ability so to do, fails to maintain his minor child under fourteen years of age, forfeits all right to the guardianship of such child; . . ."

In order to constitute abandonment "there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same." (*Guardianship of Snowball,* 156 Cal. 240, 243 [104 P. 444].) There must be more than a mere temporary absence or neglect of parental duty. (*In re Cordy,* 169 Cal. 150, 153 [146 P. 532, 634]; *Estate of Moore,* 179 Cal. 302 [176 P. 461].) Abandonment is not established by acts of relinquishment committed under circumstances of coercion, caprice, and discouragement, nor by mere acquiescence in the support of a child by relatives. (*In re Green,* 192 Cal. 714 [221 P. 903]; *Estate of Akers,* 184 Cal. 514 [194 P. 706].) Intent is the decisive factor and it may be shown by facts and circumstances, regardless of the declarations of the parent. (*In re Cordy,* 169 Cal. 150 [146 P. 532, 534].)

It is argued that John prevented Margaret "from enforcing her legal rights" and concealed Diane's whereabouts from her, and that Margaret did not know where Diane was. The court found to the contrary. In 1941, when Diane was only a few months old, Margaret deserted her and went to live with Bunn. For a short period of time,

Margaret went back to John and Diane; but in May, 1942, she again left and returned to her paramour, with whom she cohabited until 1947. When Margaret left John, Diane was only 15 months old. John's mother, Edna, and his sister lived in Brentwood. Margaret and Edna were on friendly terms. After Margaret and John separated, Diane lived with Edna until John married Lorraine in 1946. Diane has been living with Lorraine at all times since. John told Margaret that Diane was in his mother's home. Margaret saw Diane in Edna's home in 1946 when John took her there. She did not tell her she was her mother. She had made no effort to see Diane prior to that time. Margaret knew John was in the Army from 1942 to 1945 and that he was in England part of that period. She testified she made no effort to see Diane during that time. After John and Lorraine were married Margaret did nothing to learn where Diane was living. The divorce decree gave Margaret the right of reasonable visitation of Diane. She did not, at any time, seek to enforce the decree. These and the other facts we have related amply support the finding that there was no concealment and that John did not prevent Margaret from enforcing her legal rights. Contrary to Margaret's contention, the implied finding that she was not persuaded from seeing Diane by threats or coercion of John is supported by the evidence. As we have said, John was in the Army between 1942 and 1945, and she did not see him after November, 1947. The court was not compelled to believe Margaret's uncorroborated testimony that she had been so persuaded. There was evidence from which the court could infer that Margaret's sudden interest in Diane was prompted by the fact that under John's will Diane was a beneficiary of a trust appraised at $51,000, and that she was also a beneficiary under several other trusts. There is abundant evidence supporting the finding that Margaret abandoned Diane. A decree that a child is an abandoned child, made after proceedings duly had, is a final adjudication of the status of the child as of the date of the decree. (*Guardianship of Michels,* 170 Cal. 339, 342 [149 P. 587].)

Margaret contends the court should have removed Lorraine as guardian. The court found that Lorraine is a fit and proper person to have the custody, care, and control of Diane; that no ground had been proved for her removal; and that it is in the best interest of Diane, with respect to her temporal, mental, and moral welfare, that Lorraine remain as guardian.

It also found that Margaret is now a fit and proper person and is maintaining a fit and proper home, but that she is not a fit or proper person to have the custody of Diane. The finding with respect to Lorraine is amply supported.

■ Whether a showing of sufficient cause to deprive a guardian of his trust has been made is a question of fact and not of law. (*Guardianship of Reynolds*, 60 Cal.App.2d 669, 680 [141 P.2d 498].)

■ The record is replete with testimony of relatives, friends, and neighbors that Lorraine is a fit and proper person to have the custody of Diane. The evidence is uncontradicted that she keeps a very neat and clean home and that she looks after Diane's material and spiritual welfare. Diane regards Lorraine as her mother and the latter's parents as her grandparents. Diane addresses and refers to Lorraine as "mother," "mom," or "mommie." There appears to be a deep and genuine affection between Diane and Lorraine, such as would be found between a mother and her natural daughter. Diane stated she was happy with Lorraine and expressed a strong preference to remain with her. Lorraine is the only mother she has ever known.

The questions in this proceeding are purely factual. The trial court having decided the facts adverse to Margaret, the matter is at an end.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied May 12, 1954, and the following opinion was then rendered:

THE COURT.—In the opinion we stated the trial court found that Margaret is now a fit and proper person and is maintaining a fit and proper home, but that she is not a fit or proper person to have the custody of Diane. In Margaret's petition for rehearing it is said that this was an incorrect statement of the finding. Counsel is in error. Margaret, in paragraph XV of her petition to terminate the guardianship of Diane, alleged that she is a fit and proper person to have the custody of Diane. The court found that the allegations of paragraph XV "of said petition are not true, except that petitioner is now a fit and proper person and is maintaining a fit and proper home." The finding that the allegations of paragraph XV are not true except as stated is neces-

sarily a finding that Margaret is not a fit or proper person to have the custody of Diane. We must assume that in stating the exception the court intended precisely what is written and nothing more.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1954.