[Civ. No. 6337.   Fourth Dist.   Jan. 12, 1961.]

Guardianship of BABY GIRL RUTHERFORD, a Minor. ELDON G. SCHAFER et al., Respondents, v. ADELLE RUTHERFORD, Appellant.

Blodget, Gilbert & Cochran and John H. Gilbert, Jr., for Appellant.

Stanley Mosk, Attorney General, and Edward M. Belasco, Deputy Attorney General, as Amici Curiae on behalf of Appellant.

Frank Domenichini for Respondents.

COUGHLIN, J.—The primary question for determination on this appeal is whether the evidence is sufficient to support the finding of the trial court that an unwed mother, who had placed her baby daughter for adoption, had abandoned her child within the meaning of the provisions of section 1409 of the Probate Code.

The minor, Baby Girl Rutherford, was born out of wedlock on September 14, 1958. Her mother, the appellant herein, was 23 years of age; prior to the baby's birth was concerned about giving the baby a name and also about the effect which knowledge of her condition would have upon her parents; had made inquiry respecting adoption procedures; consulted an adoption agency; was advised that no adoption could be effected without her written consent; interviewed Mr. and Mrs. Schafer, to whom she had been referred by her physician, as prospective adopting parents; discussed the matter of an independent adoption proceeding with their attorney and was told by him that any such adoption would not become final until she had consented thereto in writing; visited the Schafer home for the purpose of satisfying herself with respect to their qualifications; and, while there, mentioned that she or they could change their minds at any time before she had signed the necessary consent in the manner required by law. During this period prior to the baby's birth the mother had talked to the baby's father; had urged him to marry her to "give the

child a name," but he refused to do so; had suggested keeping the baby and was advised by him to effect an adoption in order that the baby might have both a father and a mother.

Shortly before the birth the mother's parents, who lived in Colorado, learned of her condition; came to California; and were with her while she was in the hospital.

On the day after the baby was born Mr. and Mrs. Schafer visited the mother in the hospital; were told by her that things had changed as her parents knew of her condition and would give her their support; that she might be able to keep and to make a home for her child; and was advised by the Schafers that they did not want the child unless she was sure of her wishes in the matter.

The next day different people talked to her about the social problems involved; how her child might be treated at school or in the event she did not marry; her parents were urging her to return with them; according to her testimony, she was upset and confused; discussed the matter with her parents; knew that any adoption would not be final until she had given her written consent in the manner prescribed by law, but told her physician that she intended to permit the adoption, and signed a release authorizing Mr. and Mrs. Schafer to take the child. She testified that she had not then made a final determination in the matter, but permitted the release of the child knowing that she would have six months within which to make up her mind. This assumption with respect to a six-month waiting period apparently was based on the fact that the Department of Social Welfare was required by law to make a report within 180 days after the filing of a petition for adoption. (Civ. Code, § 226.)

On September 17, three days after the birth, the Schafers came to the hospital; took the baby with them; and ever since that time have had her in their custody.

From the time the baby was placed with the Schafers on September 17, 1958, until March 19, 1959, when the mother refused to sign a written consent to the adoption, her attitude was one of vacillation. When in the presence of the Schafers she assured them of her intention to consent to the adoption, but when left to her own devices engaged in a course of conduct indicating a contrary intention. In December of 1958 she asked for and was given permission to see the child. Prior to that time she had not seen the child but had made inquiries to assure herself that she had not signed a written consent to its adoption; and had endeavored to contact the father with the

hope that he might change his mind and marry her in order that she might keep the baby. On one occasion she told a representative of the State Department of Social Welfare that she was undecided whether to consent to the adoption even though previously she had told Mr. and Mrs. Schafer that she was not going to take the child away from them. The undertone of the incidents occurring during all of this time, as pictured by the evidence, reflects a feeling of obligation by the mother to Mr. and Mrs. Schafer to consent to the adoption because of her promise to them, which was opposed by an urge to keep and care for her child. When the time came that she had to make a decision she chose her child.

The next day the Schafers instituted guardianship proceedings asking to be appointed guardians of the baby. The mother sought custody through habeas corpus proceedings; two such writs were issued; but she was unable to locate Mrs. Schafer or the child. Thereupon, she filed objections to the Schafers' guardianship petition and a counterpetition asking that she be appointed guardian.

The trial court found that both the Schafers and the mother were fit and proper persons to have custody of the child; that there was an abandonment of the child "within the meaning of Section 1409 of the Probate Code"; that guardianship proceedings were necessary and convenient; and that the Schafers should be appointed guardians. From the order of appointment and an implied order denying her petition, the mother has appealed.

Section 1409 of the Probate Code provides: "A parent who knowingly or wilfully abandons or, having the ability so to do, fails to maintain his minor child under fourteen years of age, forfeits all right to the guardianship of such child."

Among others, the court made the following findings: "That Adelle Rutherford's intent to abandon all parental responsibility to her child was formed and expressed on or about September 17, 1958, after calm, prolonged deliberation and after conference with her parents and others"; that "the petitioner, Adelle Rutherford, when she delivered custody of the child to the petitioners, Eldon G. Schafer and Lucy Schafer, intended to entirely sever, so far as possible to so do, her parental relationship with said child and throw off all obligations growing out of the same"; and "it was the intent of the petitioner Adelle Rutherford, when she delivered custody of said child to the petitioners, Eldon G. Schafer and Lucy Schafer, and for a substantial period thereafter to abandon

said child and give the child up absolutely and to relinquish her rights in connection with said child."

Other findings related the evidentiary matters hereinbefore set forth. The crux of the controversy centers about the question whether the evidence is sufficient to sustain the foregoing finding of abandonment.

In guardianship proceedings, the mother of an illegitimate child should be appointed in preference to all others, and custody should be awarded to her, unless she is unfit or has abandoned her child. (Civ. Code, § 200; Prob. Code, §§ 1407, 1409; *Guardianship of Smith,* 42 Cal.2d 91, 93 [265 P.2d 888, 37 A.L.R.2d 867]; *In re Green,* 192 Cal. 714, 721 [221 P. 903]; *Guardianship of Rose,* 171 Cal.App.2d 677, 679 [340 P.2d 1045].)

The settled and oft repeated definition of abandonment is that adopted by the courts in *Guardianship of Snowball,* 156 Cal. 240, 243 [104 P. 444], where it said:

"In order to constitute abandonment 'there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same.'" (*Matter of Cozza,* 163 Cal. 514, 528 [126 P. 161, Ann.Cas. 1914A 214]; *In re Cordy,* 169 Cal. 150, 154-155 [146 P. 532, 534]; *Estate of Moore,* 179 Cal. 302, 305 [176 P. 461]; *Estate of Akers,* 184 Cal. 514, 521 [194 P. 706]; *In re Green, supra,* 192 Cal. 714, 720; *In re Bruegger,* 94 Cal.App. 589, 592 [271 P. 523]; *In re Cattalini,* 72 Cal.App.2d 662, 669 [165 P.2d 250]; *Guardianship of Kerns,* 74 Cal.App.2d 862, 867-868 [169 P.2d 975]; *Guardianship of Marshall,* 124 Cal.App.2d 807, 810 [269 P.2d 160, 936]; *In re Croze,* 145 Cal.App.2d 492, 495 [302 P.2d 595]; *Guardianship of Rose, supra,* 171 Cal. App.2d 677, 679; *In re Bisenius,* 173 Cal.App.2d 518, 521 [343 P.2d 319].)

"To abandon means to give up a right absolutely with no intention of reclaiming it, and it must be shown by the clear, unequivocal and decisive act of the party." (*Guardianship of Kerns,* 74 Cal.App.2d 862, 868 [169 P.2d 975]; *Guardianship of Romine,* 91 Cal.App.2d 389, 394 [205 P.2d 733]; *In re Cordy,* 169 Cal. 150, 153 [146 P. 532, 534].)

Judged by these well-established principles, the evidence in this case does not support the conclusion that appellant abandoned her baby daughter. Every word spoken and every act done by her which is relied upon as evidence of abandonment was an integral part of a contemplated adoption

proceeding. In placing the baby with Mr. and Mrs. Schafer there was no desertion. To the contrary, this act was part of a plan to make provision for the child. The placement of a baby in the custody of prospective adopting parents is an essential preliminary step in an adoption proceeding; is a customary practice approved by the supervising authorities; and affords an opportunity to better study and evaluate the desirability of the proposed parent and child relationship preliminary to the report and recommendation which must be made to the court before the adoption is approved. (Civ. Code, § 226.) Basic to every independent adoption proceeding of an illegitimate child is the policy of the law, clearly expressed in the statute, that the mother's consent thereto must be given in writing, on a prescribed form, signed in the presence of an agent of the Department of Social Welfare, and filed with the court, except in those cases where the mother has been deprived of custody by the Juvenile Court or has deserted her child without provision for its identification. (Civ. Code, §§ 224, 226; *Adoption of Parker,* 31 Cal. 2d 608 [191 P.2d 420].) The law recognizes the probability of indecision upon the part of the mother about to give up her child; anticipates a conflict of emotions; and has prescribed a method involving the consumption of time and the benefit of professional counselling to insure a stable final decision. Every step in a contemplated adoption proceeding is taken subject to the aforesaid underlying policy. The evidence in this case establishes without conflict that Adelle Rutherford was thoroughly familiar with the provisions of the adoption law; that she knew her consent in writing was essential to a valid order of adoption; and also knew that any decision she made in the premises was not final until she had signed the prescribed consent in the presence of an agent of the Department of Social Welfare. With this understanding, she released her child to the custody of the Schafers and, from time to time, told them that she had made up her mind to consent to the adoption. Nevertheless she knew that her statements, under the law, were not binding upon her; she told the Schafers that she felt morally obligated to them to proceed with the adoption and this sense of moral obligation undoubtedly motivated her statements when she was confronted by them. The effect of the emotional tensions generated by these personal meetings cannot be underestimated and is evidenced by the mother's ambivalence with respect to her decision as reflected in a comparison of her conduct before, during and after these

meetings. Permitting the child to remain with the Schafers for approximately two months without seeing her; permitting the Schafers to care for the child; and making no contribution to the child's support, none being requested, under the circumstances did not constitute evidence of desertion or an intent to abandon. Such conduct evidenced only a current and, as indicated by the evidence, temporary acquiescence in the progress of an adoption proceeding which would have no finality until a written consent to adoption was signed as prescribed by law.

■■■ It should be noted that either, an offer to permit the adoption of a child (*Guardianship of Romine, supra,* 91 Cal. App.2d 389, 393; *Guardianship of Minnicar,* 141 Cal.App.2d 703, 705, 708 [297 P.2d 105]); making arrangements for placement (*Matter of Schwartz,* 171 Cal. 633, 635 [154 P. 304]); mere acquiescence in support by others (*Matter of Forrester,* 162 Cal. 493, 496 [123 P. 283]; *Estate of Akers, supra,* 184 Cal. 514, 521); or failure to pay for maintenance when no demand therefor has been made (*Estate of Akers, supra,* 184 Cal. 514, 521; *Matter of Schwartz, supra,* 171 Cal. 633, 636), or no ability to provide is shown (*In re Green, supra,* 192 Cal. 714, 719; *Guardianship of Kerns, supra,* 74 Cal.App.2d 862, 868), by itself, does not prove an intent to abandon. ■ Moreover, acts of a temporary nature are not sufficient upon which to base a finding of a permanent abandonment. (*Guardianship of Snowball, supra,* 156 Cal. 240, 243 [104 P. 444]; *Guardianship of Romine, supra,* 91 Cal.App.2d 389, 394.)

■■ We do not mean to imply that a mother may not abandon her child during the course of a proposed adoption; that her conduct may not be such as would constitute an abandonment merely because such a proceeding is pending. The contrary has been adjudicated. (*In re Ayers,* 116 Cal. App.2d 55 [253 P.2d 65]; *cf. Adoption of Parker,* 31 Cal.2d 608, 617 [191 P.2d 420].) However, when the acts and declarations of the mother which are relied upon to establish an abandonment, in truth, are made in contemplation of a proposed adoption to which the mother, in the exercise of her legal right, eventually refuses to consent, no desertion or intention to abandon is proven. To hold otherwise would frustrate the underlying policy of the adoption statute which decrees that the relationship between the natural mother and her child should not be terminated through an adoption proceeding unless and until the mother has indicated her consent thereto in writing. (*Guardianship of Henwood,* 49 Cal.2d 639, 645 [320 P.2d 1].)

In passing upon the sufficiency of the evidence to sustain the finding of abandonment in this case, the record has been reviewed under "the time honored rule that all substantial conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the findings if possible." (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].) Nevertheless, such a review dictates the inescapable conclusion that all of the acts and declarations of Adelle Rutherford upon which Mr. and Mrs. Schafer rely to sustain the finding of abandonment, were done and said with respect to a prospective adoption and under the influence of the protective policy of the statute which assured her that no adoption would become final until she had given her consent thereto in writing. The evidence in no manner supports the conclusion that Adelle Rutherford by any such acts or declarations ever intended to " 'entirely sever, so far as it is possible to do so, the parental relation' " (*Guardianship of Snowball, supra,* 156 Cal. 240, 243), or give up her right to custody "absolutely with no intention of reclaiming it" (*Guardianship of Kerns, supra,* 74 Cal.App.2d 862, 868).

The trial court has determined that appellant is a fit and proper person to have custody of her child and this court has concluded that the evidence does not support a finding that she has abandoned her child. Under the circumstances, there is no necessity for a guardianship. The trial court, in the guardianship proceeding, has jurisdiction over the custody of Baby Girl Rutherford and may make its order directing Mr. and Mrs. Schafer to deliver her into the custody of her mother.

The judgment is reversed with instructions to the trial court to enter judgment denying all petitions for guardianship and ordering Mr.and Mrs. Schafer forthwith to deliver Baby Girl Rutherford into the custody of her mother, Adelle Rutherford.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied February 10, 1961, and respondents' petition for a hearing by the Supreme Court was denied March 8, 1961. Schauer, J., McComb, J., and White, J., were of the opinion that the petition should be granted.