[Civ. No. 20993. First Dist., Div. Three. Oct. 30, 1963.]

In re JAMES CLARK CONRICH, a Minor. RUTH THOMAS, as Deputy County Probation Officer, etc., Petitioner and Respondent, v. ZENE V. JASAITIS et al., Objectors and Appellants.

Robson, Malott & Pedder and Arthur Lyle Robson for Objectors and Appellants.

John A. Nejedly, District Attorney, and Stanley K. Dodson, Deputy District Attorney, for Petitioner and Respondent.

DEVINE, J.—This is an appeal from an order declaring a minor child free from the custody and control of both of his parents. The appeal is by the natural parents and by Mr. and Mrs. Jasaitis, one of two sets of prospective adoptive parents, all appellants being represented by the same attorney.

The child was born on August 5, 1960. The parents were not then married, but they did marry on October 11, 1960, in Las Vegas, Nevada. A private adoption was planned by parties named Rasmussen, acting through Mr. Robson, an attorney, and the Rasmussens took the baby into their home for one or two days. They were uneasy, however, about a conversation which Mrs. Rasmussen had with the father, who asked for money and for pictures of the child as he would grow up. They took the baby to the Probation Department of Contra Costa County. That department placed the child in a foster home and petitioned the court to declare the child a ward of the juvenile court. Petition was granted on September 12, 1960. Mr. Robson appeared in court, stating that another family, named Jasaitis, wished to adopt the child. An order was made for $75 a month support by the county. The child has been continuously in the foster home. He has not been supported in whole or in part by his parents at any time, nor has he been visited by them, nor has there been any contact by letters, Christmas or birthday cards, or in any other way.

A probation officer asked the father, at about the time of the wardship order in September 1960, for the whereabouts of the mother, but he refused to tell. He said that the mother

had wished to keep the child, but that he felt this was not in the child's interest, because the mother was going to have to go to work, and that he did not intend to marry her. On October 28, 1960, the mother signed a consent to adoption by Mr. and Mrs. Jasaitis, but there was no consent by the father, and by that time the two had married.

The county probation department asked its counterpart in Fort Wayne, Indiana, to ask the natural parents for written relinquishment for adoption, and the first response from the office in Indiana indicated the parents were willing to sign, but a later letter stated that they had refused a general consent on advice of Mr. Robson. The letter from Fort Wayne states that the parents did not wish to have the child with them.

The Jasaitis petition for adoption was filed on December 6, 1960. When it was first heard, the probation officer had not yet contacted the mother or Mr. and Mrs. Jasaitis, and the petition was denied. A petition was filed by Mr. and Mrs. Jasaitis on June 23, 1961, and this was followed by a motion for change of venue to Alameda County, the county of the Jasaitis residence. The motion was denied, and the petition was denied on the ground the juvenile court has continuing jurisdiction and the superior court, as such, has no jurisdiction over the custody of the minor. In March 1962, a hearing was held on a motion before Honorable Norman E. Gregg, judge sitting in session of the juvenile court, to have the child moved from the foster home to the Jasaitis home in Alameda County. Mr. and Mrs. Jasaitis were presently unable to proceed because of illness of a daughter. Although appellant infers from the judge's remarks that he announced an intention to place the child with the Jasaitis family, when the daughter would recover, so that investigation of the suitableness of the home could be made, and if this were favorable, adoption follow, this is not quite so. The court mentioned favorably the disposition of the child in the manner just stated, but ended the hearing by observing that removing the child from the foster home where it had lived for many months was a matter for consideration. No ruling was made. The judge directed petitioners' counsel to be sure his clients wished to adopt the child and to cooperate with the probation department to ascertain what kind of home petitioners had, and counsel agreed. A letter of Mr. and Mrs. Jasaitis, dated March 30, 1962, was filed with the court. In it petitioners state that the problem of their daughter's illness is being

taken care of and that they hope for adoption without delay. Again, no ruling was made.

On April 13, 1962, a deputy probation officer petitioned the superior court for declaration that the child be declared abandoned and free of the custody of its parents. Citation of the parents was ordered published and served at the last known address in Fort Wayne. At the hearing, before Honorable Martin E. Rothenberg on June 15, 1962, the facts recited above were testified to by a probation officer, a child welfare worker of the county, and the custodian of the child in the foster home. Mr. Robson appeared in opposition, but it is not clear for whom he appeared.* He cross-examined, and offered the adoption file in evidence. The court made the order of abandonment from which this appeal was taken on June 25, 1962. On March 1, 1963, Judge Rothenberg denied the Jasaitis petition for adoption on the ground that petitioners were on June 23, 1961, the date when the petition for adoption was filed, and ever since have been residents of the County of Alameda and that, therefore, the court does not have jurisdiction to grant the petition under section 226 of the Civil Code. On February 5, 1963, the foster family with which the child had been placed petitioned for his adoption, and the social service department of the county joined in the petition.

### Jurisdiction

■ Appellants' first contention relates to jurisdiction. Appellants concede that the superior court has jurisdiction in abandonment cases generally, under Civil Code section 232, but contend that in the circumstances of this case, the superior court exceeded its jurisdiction by interfering with the juvenile court's determining the custody of the minor.

Appellants would enlarge the effect of Judge Gregg's remarks to constitute his declaration, as juvenile court judge, that the child should be placed with the Jasaitis family for adoption. As pointed out above, however, the judge's remarks do not go nearly so far as appellants deduce, and the juvenile court has not at any time made an order transferring the custody of the child.

The case of *Marr* v. *Superior Court*, 114 Cal.App.2d 527 [250 P.2d 739], is distinguishable. There, an order of the

---

*Whether Mr. and Mrs. Jasaitis would have standing to appeal is unimportant because counsel, on appeal, assures the court he represents the natural parents, too.

juvenile court of Modoc County making the child a ward immediately became effective as to the physical custody of the child, and precluded a purported later order of the court in Siskiyou County which would have placed custody otherwise.

### Sufficiency of Evidence of Abandonment

Section 232 of the Civil Code declares the essentials of abandonment, which are these: (1) The child must have been left with another, (2) without provision for support or without communication from either or both of his parents for a period of one year (and token efforts to support or communicate may not, in the trial court's judgment, prevent abandonment), (3) intent to abandon, (4) failure to provide or communicate for one year is presumptive evidence of intent to abandon.

The first of these elements is the leaving with another. Appellants contend that the child was not truly left with another because the infant was taken by the juvenile court's order of wardship. At the very beginning, the leaving with the Rasmussens was a voluntary one, and this is a factor which the trial court was entitled to weigh. On the other hand, under some circumstances, the fact that a child is removed from a parent by court order may preclude the necessary "leaving." (*In re Cattalini,* 72 Cal.App.2d 662 [165 P.2d 250] [children were directly awarded to mother by decree of divorce; father continued to communicate with them and was unable to contribute to support]; *Matter of Cozza,* 163 Cal. 514 [126 P. 161, Ann.Cas. 1914A 214] [child taken from mother by juvenile court against her will at instance of stepfather; mother endeavored to regain child as soon as time of court's order for transferred custody expired, it having been represented to her, and she believing, that she could do nothing within that time]; *In re Jones,* 131 Cal.App.2d 831 [281 P.2d 310] [child taken from mother by court decree, mother then mentally ill; finding of nonabandonment affirmed.].)

The fact that a judicial decree has placed custody of the child away from the parents does not, however, necessarily prevent or destroy the element of "leaving" because nonaction of the parents may convert into a leaving (and, the other elements present, into an abandonment) that which initially could not be regarded so. (*In re Maxwell,* 117 Cal. App.2d 156, 165 [225 P.2d 87] [three year nonaction by parent after child was made ward of juvenile court; trial

court's finding of abandonment upheld despite mother's rehabilitation from alcoholism] ; *In re Barton*, 168 Cal.App.2d 584 [336 P.2d 210] [trial court's finding of abandonment sustained for lack of communication or support, although child was placed by guardianship decree following mother's consent for guardianship for care; mother had tried to regain child by habeas corpus, and testified noncommunication was based on belief she was forbidden by court to communicate with child, and no demand had been made for support].) The relevant nonaction of the parents is that of failure to contribute to support or to communicate, subjects considered below, but the conclusion on this first point, that of "leaving," is that there may be such leaving even though originally a court decree has taken the custody of the child from the parents.

It is undisputed that the natural parents contributed nothing to the support of the child from the time of the wardship until and including the time of the abandonment hearing, a period of 21 months. No showing of inability was made, and the references thereto in appellants' brief are unsupported by the record. Appellants are correct in stating that failure to contribute in the absence of demand does not necessarily show abandonment (*Guardianship of Rutherford*, 188 Cal. App.2d 202, 208 [10 Cal.Rptr. 270] ; *In re Salazar*, 205 Cal. App.2d 102, 107 [22 Cal.Rptr. 770] ), but this, of course, is not to say that, coupled with failure to communicate, it may not do so.

Appellants argue that the proposed adoption by Mr. and Mrs. Jasaitis, with which the natural parents seem to have concurred, was a constructive contribution to support. We do not find that it is necessarily so. This adoption might never have occurred, for there was the problem of residence in another county, and there was the possibility of withdrawal (for example, because of illness of a member of the family, which actually did effect a postponement), or of failure of the petitioners to qualify for financial or similar reasons even if, as we have no reason to doubt, their qualities of character would be found estimable.

On the subject of communication, it is undenied that there has been none. It is said in appellants' brief that the parents did not know in which foster home the child had been placed, but it would seem that communication could have been readily made through the probation department or through

668

the judge of the juvenile court. The absence of letters and cards to the child may not be particularly significant because of the child's age, although they might have some symbolic effect. The total lack of inquiry, however, indicates the absence of any intent of the natural parents to regain the child. Indeed, it is conceded that they do not wish to recover custody. They wish, apparently, to bring about the Jasaitis adoption, but they have not taken the trouble to say so positively to the trial court, nor to give their reasons. It was within the discretion of the trial judge to consider that the parents did not appear personally at the abandonment hearing, nor by deposition, and that the effort made by the defense at that time seemed to be put forth by the parties Jasaitis, rather than by the natural parents.

 Determination of intention to abandon, from all of the facts, from the presumption set down in the code section, and from legitimate inferences, is the proper office of the trial judge. (*In re Salazar, supra,* 205 Cal.App.2d 102, 106; *In re Gano,* 160 Cal.App.2d 700, 705 [325 P.2d 485]; *In re Barton, supra,* 168 Cal.App.2d 584, 588.)

Order affirmed.

Draper, P. J., and Salsman, J., concurred.