[Civ. No. 5189. Fifth Dist. Feb. 6, 1981.]

COUNTY OF FRESNO, Plaintiff and Appellant, v.
BILLIE WALKER, Defendant and Respondent.

---

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

---

**OPINION**

**ZENOVICH, J.**—The County of Fresno filed a "Complaint for Establishment of Child Support Obligation and for Reimbursement of Public Assistance" against respondent Billie Walker, alleging that (1) he was the natural father of Renee Walker, (2) that he had a present duty to support her, and (3) that he should refund the County of Fresno for public assistance provided her during a given time period.

The novel question before us is whether, under Civil Code section 208, an abandonment without just cause by a child requires a permanent relinquishment of submission to parental control.

Renee Walker was born on August 10, 1960, and is the daughter of respondent Billie Walker and his former wife, Pat Werder. Respondent and his former wife divorced sometime during the 1969-1971 period. By terms of an interlocutory decree of divorce, respondent was awarded with the care, custody and control of Renee.

Renee became pregnant out of wedlock in late 1977. Although respondent had provided her with all the necessities of life, Renee left her father and went to live with her mother on January 1, 1978. Renee

testified that respondent did not want her to leave and explicitly asked her to stay with him. She also indicated that they "did not have words or there was no problems between the two of [them]." In explaining why she left respondent's care, Renee stated, "I just wanted to be with my mother while I was pregnant."[1] She affirmatively noted that her mother helped her during the pregnancy.

Renee's child was born on August 18, 1978. In September 1978, Renee returned to live with respondent. She and her child had been living with and receiving support from her father even up to June 1979 (the date of the superior court hearing). Renee received public assistance from appellant county from January to August of 1978.

When asked whether she intended to leave her father and stay away forever, Renee replied, "I didn't really know."

Tom Orvis, appellant's counsel and an employee of the family support division of the district attorney's office, testified that two referrals were made in the present case. He noted that the policy in the family support division was to hold the father of the unborn child liable for one-half of the public assistance cost and to hold respondent (the natural parent of the pregnant minor) liable for the remaining half of the cost. Subsequent testimony established that this 50/50 division was made because there were two referrals to the family support division. Although expressing disapproval with this method of division, the trial court never specifically ruled on the propriety of this allocation procedure.[2]

In denying appellant county's claim for reimbursement, the court stated at the close of the proceeding: "...it seems to me that from the evidence I have heard, that the parent here, Mr. Walker, had provided a home up until the time the child had decided to leave, had met his

---

[1]Specifically, Renee testified as follows on direct examination:
"Q. Was there any fight with your father prior to your leaving?
"A. No.
"Q. And could you explain a little bit more about why you wanted to be with your mother?
"A. Well, I'd much rather be with my real mother than step-mother.
"Q. Did you have problems with your step-mother?
"A. No."
[2]Given the finding of an abandonment, it was unnecessary for the superior court to rule on the allocation issue.

obligation, in fact resumed the obligations even when he didn't have to once the child returned after the baby was born, and at that time she was already 18 years old as I understand it, and yet he still was willing and able to assist her. There was no clear and convincing evidence before the Court on the issue of abandonment, but it seems to me that if he requested her to stay, provided her a place to stay, the Court is going to make a finding on the equities in the case that there was abandonment and find for the defendant." Appellant county objected to the proposed finding of abandonment, and an additional hearing was held before the superior court. The court reaffirmed the abandonment finding, stating that "... I don't agree necessarily with the argument that the abandonment has to be forever, for example, my recollection, my days in the military, when a fellow went AWOL, one of the indicia of his intent to return and not be a deserter is as such as the fact that he would leave some item of clothing and that was some indicia that he intended to come back. In this case, my recollection of the facts is that she just picked up, took everything and left. The fact that she changed her mind at a later point in time and returned to her father to me is a brand new incident, brand new event, had nothing to do with her intent at the time she left."

Accordingly, the superior court issued the following findings of fact and conclusions of law:

[FINDINGS OF FACT]

"1. The County of Fresno is a political subdivision of the State of California.

"2. Billie Walker is the natural father of Renee Walker, born August 10, 1960. During the period in question, mainly January of 1978 through August 10, 1978, the defendant Billie Walker, by virtue of a Decree of Divorce, had the care, custody and control of minor child Renee Walker.

"3. On or about January 1, 1978, Renee Walker, without just cause, separated from her father.

"4. At the time of the separation, the defendant Billie Walker was willing and able to furnish the necessities of life to the minor child, Renee Walker.

"5. During the period from January 1, 1978 through August of 1978, the plaintiff, the County of Fresno, paid to Renee Walker and her unborn child, in the form of public assistance, approximately $1,253.00."

[CONCLUSIONS OF LAW]

"From the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

"1. That the defendant father Billie Walker is not liable for the support furnished to the minor child Renee Walker by the County of Fresno, due to the fact that the minor child abandoned her father without just cause."

■ Appellant county contends that the superior court erred in finding that Renee Walker abandoned respondent without just cause when she stayed with her natural mother before parturition. We disagree.

■ Civil Code section 208[3] provides: "A parent is not bound to compensate the other parent, or relative, for the voluntary support of his child, without an agreement for compensation, *nor to compensate a stranger for the support of a child who has abandoned the parent without just cause.*" (Italics added.) There appear to be no decisions in California which directly deal with abandonment by a child under section 208. Nevertheless, case law interpreting a contemporaneous provision in the Civil Code demonstrates that abandonment was meant to refer to a permanent relinquishment of parental care and custody. We therefore are called upon to examine this contemporaneous provision and the definition of abandonment promulgated by the courts thereunder.

Section 211, which was contemporaneously enacted with section 208, reads: "The parent, whether solvent or insolvent, may relinquish to the child the right of controlling him and receiving his earnings. *Abandonment by the parent is presumptive evidence of such relinquishment.*" (Italics added.) The case of *Perkins v. Robertson* (1956) 140 Cal.App. 2d 536, 540 [295 P.2d 972], delineated what was required for an emancipation under section 211: ""Emancipation" of a child is the *relinquishment by the parent of control and authority over the child,*

[3]Unless otherwise indicated, all code references are to the Civil Code.

conferring on him the right to his earnings and terminating the parent's legal duty to support the child.'" (Italics added; accord *Jolicoeur* v. *Mihaly* (1971) 5 Cal.3d 565, 580 [96 Cal.Rptr. 697, 488 P.2d 1].)

Careful research of the Civil Code reveals that section 211 is the only contemporaneous provision to section 208. Nonetheless, the Legislature has enacted many similar provisions regarding abandonment during the period after 1872. It is therefore relevant to review these statutory provisions for purposes of determining whether abandonment contemplates a *permanent* relinquishment.

In 1891, former section 224 was amended to read: "A legitimate child cannot be adopted without the consent of its parents, if living, ... except that consent is not necessary from a father or mother deprived of civil rights, or adjudged guilty of adultery or of cruelty, and for either cause divorced, or adjudged to be an habitual drunkard, or who has been judicially deprived of the custody of the child on account of cruelty or neglect; *neither is the consent of any one necessary in case of any abandoned child.*" (Italics added.)[4] Case law interpreting this former provision made it clear that abandonment involves an absolute relinquishment of the custody and control of the minor with an intention to entirely sever parental obligations. (*In re Cordy* (1915) 169 Cal. 150, 153-155, [146 P. 532], disapproved on another point in *Adoption of Barnett* (1960) 54 Cal.2d 370, 378 [6 Cal.Rptr. 562, 354 P.2d 18]; *Matter of Cozza* (1912) 163 Cal. 514, 528 [126 P. 161], disapproved on another point in *Adoption of Barnett, supra*, 54 Cal.2d 370, 378; *Matter of Petition of Kelly* (1914) 25 Cal.App. 651, 658-659 [145 P. 156]; Annot., What Constitutes Abandonment or Desertion of Child By Its Parent or Parents Within Purview of Adoption Laws (1954) 35 A.L.R.2d 662, 666-667.) Specifically, the dictionary meaning of abandonment was utilized by the court in *In re Cordy, supra*, 169 Cal. at pages 153-154. The *Cordy* court noted that: "The word 'abandon' as defined by Webster means 'To relinquish or give up with the intent of never again resuming or claiming one's rights or interest in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation of allegiance or fidelity; to quit; to forsake.'

---

[4]See Statutes 1891, chapter 37, section 1, page 24. In 1907, the following language was added to the statute: "Any child deserted by both parents or left in the care and custody of another by its parent or parents, without any agreement or provision for its support, for the period of one year, is deemed to be an adandoned child within the meaning of this section ...." (Stats. 1907, ch. 268, § 1, pp. 331-332.)

[Citation.] ... We think rather that the meaning of the word 'abandoned' as above given was intended by the makers of the law to dominate the [former] section [224], and to cause to be read into every part and provision of it the idea that the acts of the parent in relation to the child enumerated in the statute must have been done with an intent to abandon the child." In the present version of section 224, it is interesting to note that the Legislature decided that consent was not necessary in adoption cases "where such father or mother of any child has *relinquished* such child for adoption as provided in Section 224m; ..." (§ 224, subd. 3, italics added; see also *San Diego County Dept. of Pub. Welfare* v. *Superior Court* (1972) 7 Cal.3d 1, 16-17 [101 Cal.Rptr. 541, 496 P.2d 453] (finding of abandonment under § 224 supported by mother's testimony of having no desire to take the child back and raise it herself).)

In 1905, the Legislature amended former section 246, subdivision 4, to read as follows: "Any parent who knowingly or willfully abandons, or having the ability so to do, fails to maintain his minor child under the age of fourteen years, forfeits the guardianship of such child; ..."[5] Our Supreme Court clarified this language by setting forth the following definition: "In order to constitute abandonment [under former § 246] 'there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same.'" (*Guardianship of Snowball* (1909) 156 Cal. 240, 243 [104 P. 444]; see also *Guardianship of Rutherford* (1961) 188 Cal.App.2d 202, 206 [10 Cal.Rptr. 270, 98 A.L.R.2d 410]; cf. *Guardianship of Brazeal* (1953) 117 Cal.App.2d 59, 61 [254 P.2d 886].) The court in *Rutherford* provided further elucidation of this concept: "[¶] 'To abandon means to give up a right absolutely with no intention of reclaiming it, and it must be shown by the clear, unequivocal and decisive act of the party.'" (*Rutherford, supra,* 188 Cal.App.2d at p. 206.) We are of the opinion that both *Snowball* and *Rutherford* indicate that, for purposes of former section 246, abandonment connotes action evidencing a permanent relinquishment.

Under section 232, subdivision (a)(1),[6] a child is deemed to have been abandoned in an action to declare him or her free from parental

[5]See Statutes 1905, chapter 562, section 5, pages 728-729. This section has now been repealed and reincorporated as Probate Code section 1409.

[6]This section was originally enacted as part of the Juvenile Court Law in 1931 (Stats. 1931, ch. 794, § 1, p. 1654, amending Stats. 1915, ch. 631, § 1, pp. 1225-1226).

custody and control where the child "has been left without provision for his identification by his parent or parents or by others or has been left by both of his parents or his sole parent in the care and custody of another for a period of six months or by one parent in the care and custody of the other parent for a period of one year without any provision for his support, or without communication from such parent or parents, with the intent on the part of such parent or parents to abandon such person." Case law construing this provision has defined abandonment by reference to the dictionary language utilized by the court in *In re Cordy, supra*, 169 Cal. 150. (See, e.g., *In re Cattalini* (1946) 72 Cal. App.2d 662, 670 [165 P.2d 250]; see also *Adoption of R. R. R.* (1971) 18 Cal.App.3d 973, 981-982 [96 Cal.Rptr. 308]; 4 Markey, Cal. Family Law Practice and Procedure (1980) § 71.10[2][a], pp. 71-7 to -8; cf. *In re Susan M.* (1975) 53 Cal.App.3d 300, 308-309 [125 Cal.Rptr. 707].)

Section 206.5[7] provides that an adult child may be released from the obligation to support a needy parent imposed by section 206 if the child was abandoned by the parent for a continued period of two or more years. It has been held that an abandonment under section 206.5 "contemplates an intentional disruption of the parent-child relationship. . . . 'there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same.'" (*Chryst* v. *Chryst* (1962) 204 Cal.App.2d 620, 622-623 [22 Cal.Rptr. 459]; *Stark* v. *County of Alameda* (1960) 182 Cal.App.2d 20, 23-24 [5 Cal.Rptr. 839]; 4 Markey, Cal. Family Law Practice and Procedure, *supra*, § 61.21[4][c], p. 61-17.) The *Stark* court specifically relied upon the definitions of abandonment contained in *In re Cordy, supra*, 169 Cal. 150, and *In re Cattalini, supra*, 72 Cal.App.2d 662.

Moreover, besides this array of California legal authority, it is pertinent to note that New York courts have also adopted a stringent standard for proving abandonment. In order to terminate the parent's obligation to provide child support, it must be shown that the child voluntarily and without good cause abandoned the parent's home "'for the purpose of seeking its fortune in the world or to avoid parental discipline and restraint. . . .'" (*Roe* v. *Doe* (1971) 29 N.Y.2d 188, 193 [324 N.Y.S.2d 71, 74, 272 N.E.2d 567].) Several cases have denied either a child's or public assistance agency's attempt to get child support from a

---

[7]This section was originally enacted in 1955. (Stats. 1955, ch. 613, § 1, pp. 1102-1103.)

parent when the circumstances clearly show that the child engaged in a pattern of conduct evidencing relinquishment of submission to parental control. (See, e.g., *Parker* v. *Stage* (1977) 43 N.Y.2d 128, 131, 134-135 [400 N.Y.S.2d 794, 795, 797, 371 N.E.2d 513, 98 A.L.R.3d 328] (daughter took up permanent residence with paramour and had a child; daughter expressed intention to leave home permanently and support herself through public assistance); *Roe* v. *Doe, supra*, 29 N.Y.2d 188, 191-192, 193-194 [324 N.Y.S.2d 71, 73, 74-76] (abandonment found when daughter disregarded father's living instructions during college and resided with parents of a girl friend when returning to New York).)

Especially instructive on the abandonment issue is the case of *Thompson* v. *Thompson* (1978) 94 Misc.2d 911 [405 N.Y.S.2d 974], affirmed (1979) 71 App.Div.2d 753 [419 N.Y.S.2d 239]. *Thompson* involved a situation in which a daughter left the parent's home after birth of a child because there was not enough money or room for all of them to continue living together. With the consent of her mother, the daughter began living with her paramour. When her father cut off support payments, the daughter petitioned for an enforcement of his support obligation. The family court rejected the father's contention of abandonment by stating: "... the petitioner could not be said to have voluntarily and without good cause left her parent's home.... The petitioner left because there was not sufficient room or money to permit her to stay. Furthermore, no evidence was introduced that the petitioner even contemplated leaving were it not for the lack of money and room. There is also no evidence that the petitioner is not still subject to the exercise of parental control and guidance even though she is living outside of her parent's home.... The petitioner here did what the situation dictated to the benefit of all concerned." (*Thompson* v. *Thompson, supra*, 405 N.Y.S.2d at p. 975.)

On appeal, the appellate division affirmed the order of the family court. In doing so, it stated: "At the first hearing in this proceeding, appellant [father] offered to resume support if petitioner [daughter] returned to her mother's home or joined him in his home. Petitioner rejected the offer at that time, but has since returned to her mother's home. This confirms the initial finding of Family Court that petitioner was still subject to the exercise of parental control and guidance, and that she had not voluntarily abandoned her family within the meaning of *Matter of Parker* v. *Stage*, ... Therefore, since the family relationship upon which the father's support obligation rests continues, his duty

of support has not ended." (*Thompson v. Thompson, supra*, 71 App. Div.2d 753 [419 N.Y.S.2d 239, 241].)

Thus, we believe *Thompson* persuasively demonstrates that abandonment must be based upon proof which indicates a child's permanent relinquishment of submission to parental control.

The foregoing California and New York legal authority demonstrates that abandonment denotes a permanent relinquishment of submission to parental control. However, the question of abandonment is a factual issue which can be proven by circumstantial evidence. Abandonment is not necessarily negated by the child's assertion that she entertained no intent to abandon or upon an ambiguous statement that she did not know whether it was her intent to stay away forever. (Cf. *Adoption of Oukes* (1971) 14 Cal.App.3d 459, 466-467 [92 Cal.Rptr. 390], criticized on another point in *Guardianship of Baby Boy M.* (1977) 66 Cal.App.3d 254, 277-278 [135 Cal.Rptr. 866] (dealing with § 232); see also cases cited in Annot., What Voluntary Acts of Child, Other Than Marriage or Entry Into Military Service, Terminate Parent's Obligation to Support (1970) 32 A.L.R.3d 1055, 1066-1067.) Furthermore, under some circumstances, a relinquishment for a finite period may be permanent and irrevocable in nature, giving rise to an inference of abandonment.

■ A review of the evidence in the present case shows that respondent Walker met his burden of showing a relinquishment of submission to parental control by Renee. The uncontradicted facts show that Renee left the residence over her father's protest and stayed with her mother from January to September of 1978. The record also reveals that Renee attained majority in August 1978. ■ It is well established that the obligation of the parent to support the child ordinarily terminates when the child reaches majority. (*Codorniz v. Codorniz* (1950) 34 Cal.2d 811, 817 [215 P.2d 32]; *Levy v. Levy* (1966) 245 Cal.App.2d 341, 363 [53 Cal.Rptr. 790]; *Spivey v. Furtado* (1966) 242 Cal.App.2d 259, 262 [51 Cal.Rptr. 362]; 32 Cal.Jur.3d, Family Law, §§ 296, 299, pp. 337, 340; see also § 204 (parental authority ceases when minor attains majority).) ■ Since Renee turned 18 before returning to respondent, her 7-month hiatus rendered the relinquishment permanent and irrevocable in nature. No clear explanation was given for her decision to leave respondent, and she returned to his control during a period in which he was not obligated to provide any further support. Such

circumstances were an adequate basis for finding that Renee permanently abandoned respondent, since she returned when Walker had no binding obligation to provide support.[8] As the lower court correctly noted, "The fact that she changed her mind at a later point in time and returned to her father" does not negate the circumstantial evidence showing relinquishment of respondent's control prior to her 18th birthday.[9] Renee's hiatus with her mother during pregnancy adequately supports the view of a relinquishment which was permanent and irrevocable. Thus, we sustain the trial court's legal conclusion that "The minor child abandoned her father without just cause."

As a matter of public interest, we also comment on another aspect of the present case. Section 208.5 explicitly states, "The father or mother of a minor child shall not be liable for the support of a child of such minor child." In spite of this limitation, appellant county presented no itemization of which costs were attributable to Renee and which expenditures were necessary for the support of the unborn child. Instead, the evidence showed that the family support division merely allocated costs on a 50/50 basis because there were two referrals (i.e., one for Renee and one for the unborn child). Reliance on the 50/50 administrative practice of the family support division may incorrectly result in excessive reimbursements in future cases. We therefore express our belief that the county should bear the burden of presenting a precise breakdown of what expenses are necessary to support a minor child (rather than the child of a minor child) in future proceedings where reimbursement is properly due from a minor's parent. This allocation of the burden of proof will insure that reimbursement payments are determined in a fair manner.[10]

---

[8]Any support provided by Walker after Renee's 18th birthday was gratuitous in nature. (Cf. § 210.)

[9]As indicated earlier, the ambiguous statement about her intent was not dispositive and was merely one of the circumstances to be weighed by the trial judge. (See *Adoption of Oukes, supra*, 14 Cal.App.3d at p. 467.)

Although the New York appellate court in *Thompson* noted that the eventual return of the daughter supported the family court's determination of no abandonment (419 N.Y.S.2d at p. 241), that case is distinguishable from the present matter. The daughter in *Thompson* had not attained majority at the time that her father had stopped making payments (*id.*, at p. 240), rendering *Thompson* divergent from the instant situation.

[10]We also note with interest the case of *Richards* v. *Gibson* (1979) 90 Cal.App.3d 877 [153 Cal.Rptr. 561], which explored the alternative statutory basis (i.e., § 207) for a custodial parent's evasion of liability for necessaries furnished by a third person to his child. The court in *Richards* stated that "... section 207 spells out that a parent may be held liable for the necessaries provided to the child by a third person only if he *neglects* to supply such necessaries to the child." (*Richards, supra*, 90 Cal.App.3d at

The judgment is affirmed.

Hopper, Acting P. J., and Lauritzen, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1981.

---

p. 882, fn. omitted.) In the instant matter, appellant framed its complaint for reimbursement of *support* payments, and the case was never litigated under the rubric of section 207. Accordingly, we decline to pass upon the applicability of this provision, although the facts in the present record show no indication of neglect on respondent's part.

*Assigned by the Chairperson of the Judicial Council.