[Civ. No. 2386. Fifth Dist. Nov. 26, 1975.]

In re SUSAN M., a Minor.
TULARE COUNTY WELFARE DEPARTMENT,
Petitioner and Respondent, v.
CAROLYN. M., Objector and Appellant.

**COUNSEL**

Dale Parham, John S. Higgins, Jr., Charles L. Lazaro, Aaron E. Nowack, Carol LeRoque Ackley, Randall C. Lyons and Bill Bernard for Objector and Appellant.

Daniel M. Luevano, Rosalyn M. Chapman, Philip L. Goar, W. Kenneth Rice and Dorothy T. Lang as Amici Curiae on behalf of Objector and Appellant.

Calvin E. Baldwin, County Counsel, and Clark F. Ide, Deputy County Counsel, for Petitioner and Respondent.

Ralph B. Jordan, County Counsel (Kern), and Peter C. Carton, Deputy County Counsel, as Amici Curiae on behalf of Petitioner and Respondent.

## OPINION

**GARGANO, J.**—This is an appeal from an order and judgment entered pursuant to section 232 of the Civil Code, declaring a minor child free from the custody and control of her parents and referring the minor for adoption placement.[1] The appeal is by the child's mother and, inter alia, raises two fundamental questions: first, before proceedings are instituted by a county welfare agency, pursuant to section 232 of the Civil Code, to free a minor from the custody and control of its parents, must the agency offer parents, who are otherwise qualified to receive them, the child protective services delineated in sections 16500-16511 of the Welfare and Institutions Code; and, second, if a petition to free a minor child from the custody and control of its parents is filed by a county welfare agency, though child protective services never were offered to parents who otherwise were qualified to receive them, must the services be ordered by the superior court and the results evaluated before the petition can be granted?

Appellant, Carolyn M., the oldest of four children, was raised in the State of Kansas by her maternal grandmother; she was placed in the grandmother's home by the juvenile court of that state after the court found that the home of appellant's mother was an unfit place for the children.

On November 28, 1964, appellant married Gary M. in Kansas. Two children were born of the marriage, a son Mark and a daughter Michelle. The couple separated in June 1969, and a final divorce was granted on March 10, 1970; custody of the two children was awarded to appellant.

In March 1970, appellant and her two children came to California to stay with appellant's mother in the City of Woodlake, Tulare County; the mother and daughter could not get along, and appellant moved to San Bernardino County with her two children. In October of that year

---

[1]While references to section 232 of the Civil Code are to the code section as it existed prior to the 1973 amendment which did not become effective until January 1, 1974, the principles articulated herein are equally applicable to the section as amended.

appellant returned to Tulare County and, with her children, took up residence in the City of Woodlake in a small three-room frame cabin with an inside toilet and running water; at that time appellant was pregnant with Susan.

On January 22, 1971, Mark's teachers at the Woodlake Elementary School District requested Frances Phillips, a school nurse, to take the boy home because he was filthy and smelled so badly of urine and other disagreeable odors that his classmates were complaining. The nurse discovered that the boy's home was also in a filthy condition and that appellant and her children were in dire need; Ms. Phillips obtained food for the family from the Red Cross and reported the situation to the Tulare County Welfare Department.

On January 27, 1971, Esther Arden, a public health nurse for the Tulare County Health Department, went to appellant's home in Woodlake. Appellant was extremely thin and obviously pregnant; appellant expressed concern over her economic plight and told Ms. Arden that she only had beans, rice, oatmeal and a half of cube of butter in the house; she said that she had no money to purchase groceries, was without transportation and had not visited a doctor for her pregnancy since December 10, 1970. Ms. Arden noted that the inside of the house was extremely dirty and that dirty clothes and unwashed dishes, pots and pans were cluttered all about. The two children were very pale, and Mark looked poorly nourished; neither child had been washed for sometime, and both were "caked" with dirt.

On February 9, 1971, Ms. Arden made a second visit to appellant's home. By then appellant had received supplementary food from the county welfare department, and her financial situation was improved. The house was still very dirty.

On February 26, 1971, the public health nurse returned to appellant's house for the third time. Appellant again expressed concern over her economic plight and said she was considering placing her unborn child for adoption after the baby was born. She told Ms. Arden that she had a difficult time accepting the pregnancy because she was not sure who the father was and that she did not feel she could care for the infant, either emotionally or economically. The house, as usual, was in a filthy condition.

On March 5, 1971, appellant gave birth to Susan; the infant weighed 5 pounds, 10 ounces.

On April 21, 1971, Ms. Phillips and Ms. Arden made a joint visit to appellant's house. Susan was lying in a basinet crying, and the child smelled of old milk residue. The wooden table used by the members of the family as a dining table had no tablecloth, and remnants of food were lying on top of it. The kitchen was littered with leftovers from many meals, and unwashed baby bottles were near the sink; flies were over "everything." Ms. Arden encouraged appellant to feed the baby, and appellant picked up a bottle containing "clabbered" milk; she fed the baby this milk. Then, appellant took a dirty baby bottle, rinsed it out with tap water and filled the bottle half full of evaporated milk; she filled the rest of the bottle with tap water and fed the combination to the infant who sucked on the bottle "hungrily."

On May 18, 1971, Dr. George Tiss, a pediatrician, examined Susan at the Visalia Medical Center. The examination disclosed that the baby was severely anemic, somewhat cyanotic and inflicted with bronchiolitis. The examination also disclosed that the infant was very malnourished, tremendously dehydrated and had a severe and dangerous diaper rash; she weighed only six pounds, eight ounces.

In June 1971, the Juvenile Court of Tulare County, pursuant to sections 600, 726 and 727 of the Welfare and Institutions Code, adjudged Susan to be a dependent child of the court, removed the infant from appellant's custody and control and committed her to the care, custody and control of respondent Tulare County Welfare Department; in turn, respondent placed the infant in a foster home in Dinuba, California, operated by Dale and Erika Swiney. The welfare department then arranged for the Swineys to take the baby twice a month to a welfare office near appellant's home so that appellant could visit the child; appellant showed up for less than half the visits.

In January 1972, appellant obtained her own means of transportation, and the scheduled semi-monthly visits at the welfare office terminated. Thereafter, appellant visited her daughter on two occasions, once in January or February, and again in May 1972; in early July 1972, appellant moved to San Francisco.

On July 29, 1972, appellant returned to Tulare County to attend a review hearing conducted by the juvenile court. After the hearing, appellant talked with Judith Kassen of the Child Protective Services Division of the Tulare County Welfare Department and told the welfare worker she was having mental difficulties. Appellant stated, "I am not

well in my head, I am having memory lapses, I don't know what I'm doing." She also told Ms. Kassen, "I know I am not ready for my kids now." A short time later appellant returned to Wichita, Kansas, to live with her grandmother.

On July 10, 1973, the Tulare County Welfare Department instituted this action, pursuant to section 232 of the Civil Code, to have Susan declared free from the custody and control of her parents. The petition, in two causes of action, alleged that appellant had abandoned her child within the meaning of subdivision (a) of section 232 and that she had neglected the baby within the ambit of subdivision (b) of section 232; the petition also alleged that the father was unknown.

On August 8, 1973, appellant wrote to the clerk of the Tulare County Superior Court, stating that she would like to have Susan back but that she did not have funds to travel to California. She explained that she was on "Wichita welfare" and had given birth to another child who was then five months old.

In October 1973, appellant, through an attorney, again wrote to the clerk of the court, stating that she wanted to have custody of her daughter and her interests protected. In the interim, appellant's grand-mother wrote a letter to the Swineys, stating that appellant's health was improving and that she was getting over her nervous condition and mental depression.

On December 6, 1973, the superior court held a hearing on the welfare department's petition. At the hearing, appellant's counsel attempted to prove that between the time Susan was made a dependent child of the juvenile court, pursuant to section 600 of the Welfare and Institutions Code, and the bringing of the present proceeding by respondent, the "child protective services" mentioned in the federal aid to families with dependent children program (42 U.S.C.A. §§ 601-610 [42 U.S.C.S. §§ 601-610]), and the federal child-welfare services program (42 U.S.C.A. §§ 620-626 [42 U.S.C.S. §§ 620-626]), as implemented by sections 16500-16511 of the Welfare and Institutions Code, never were offered to appellant or considered by either the Tulare County Welfare Department or the juvenile court as a possible solution to the problems at hand. The court rejected the proffered evidence even though it was undisputed that the services were available in Tulare County in June 1971 when the child initially was removed from the custody of her mother.

At the conclusion of the hearing, the trial judge, without making express findings of fact, entered an order and judgment declaring Susan Lynn free from the custody and control of her parents and referring her for adoption placement. Appellant has appealed, challenging the sufficiency of the evidence to support the order and judgment; she asserts that there was insufficient evidence to support an implied finding that she either abandoned her child within the meaning of subdivision (a) of section 232 of the Civil Code or neglected the baby within the ambit of subdivision (b) of that section.[2] In addition, appellant contends that the court erred in rejecting her proffered evidence on child protective services because the Tulare County Welfare Department was under a mandatory duty to consider and offer the services before it instituted this proceeding, and in failing to make the finding required by section 4600 of the Civil Code.

## THE SUFFICIENCY OF THE EVIDENCE

We would be reluctant to uphold any part of the order and judgment which was entered in this case if an implied finding of abandonment were the only basis for the court's decision. First, while appellant did not support her daughter after Susan was declared a dependent child of the juvenile court and removed from her custody, it is undisputed that appellant was not financially able to support the baby and never was requested to do so. (*In re T. M. R.* (1974) 41 Cal.App.3d 694, 698, fn. 2 [116 Cal.Rptr. 292]; *Adoption of R. R. R.* (1971) 18 Cal.App.3d 973, 981 [96 Cal.Rptr. 308]; *In re Conrich* (1963) 221 Cal.App.2d 662, 667 [34 Cal.Rptr. 658]; *In re Salazar* (1962) 205 Cal.App.2d 102, 107 [22 Cal.Rptr. 770]; *Guardianship of Rutherford* (1961) 188 Cal.App.2d 202, 208 [10 Cal.Rptr. 270, 98 A.L.R.2d 410].) Second, there is no evidence that appellant intended to abandon the infant nor did she ever give any indication that she was giving the baby up. If anything, the evidence is to the contrary; appellant may not have visited or communicated with the child with great frequency, but she always made some form of inquiry at

---

[2]In pertinent part, subdivision (a) of section 232 of the Civil Code provides that an abandonment takes place whenever a minor child ". . . has been left by both of his parents or his sole parent in the care and custody of another without any provision for his support, or without communication from such parent or parents, for the period of six months with the intent on the part of such parent or parents to abandon such person."

Subdivision (b) of section 232 states that a minor may be declared free from the custody and control of either or both of his parents or sole parent if he is a person "[w]ho has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents."

least every six months; though not required to do so, appellant returned to Tulare County from San Francisco to attend the review hearing that was held on July 29, 1972; when appellant was notified of the initiation of this proceeding, she immediately wrote to the court clerk and told him that she would like to have her baby back but did not have funds to travel to California.

Respondent stresses these points: Before obtaining her own transportation, appellant visited Susan only once a month at the welfare office near her home even though the welfare department made arrangements for semi-monthly visits; appellant moved to Kansas without giving an adequate explanation for leaving and then wrote only four letters to the Swineys during the one-year period immediately preceding the filing of the petition which precipitated this litigation; and appellant failed to appear at the hearing in this proceeding. Respondent argues that these facts support an implied finding of abandonment under the last sentence of the first paragraph of subdivision (a) of section 232 which states that "[i]f in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents." .

Respondent's contentions are frivolous. It is true that appellant visited her daughter only once a month at the welfare office near her home even though the welfare department had made arrangements for semi-monthly visits; it is undisputed that at that time appellant was having mental problems and, under these circumstances, the monthly visits cannot be deemed token visits. Although appellant left California without giving the authorities an explanation for leaving, her reasons for doing so are apparent; all of appellant's children had been removed from her custody, and she returned to Kansas to be near the grandmother who raised her. Mrs. Swiney testified that she received only four letters from appellant during the year preceding the filing of the petition, but neither the letters nor their contents were admitted into evidence; to characterize those communications as "token" without knowing their contents "would be to engage in . . . speculation." (*In re T. M. R., supra,* 41 Cal.App.3d 694, 699.) Appellant did not attend the hearing, but it is uncontradicted that she was in Kansas and did not have funds to travel to California; and it was at appellant's request that the court appointed counsel to represent her in this proceeding because of her indigency.

■ We do not agree, however, with appellant's assertion that the evidence was insufficient to sustain an implied finding of parental neglect. Two qualified witnesses testified that appellant constantly kept her home and children in a filthy, unsanitary condition and that she was ineffective and unable to cope with her responsibilities as a mother; the witnesses said that they saw appellant feed the baby unwholesome, unsanitary food from dirty bottles. In addition, there was medical testimony that when Susan was examined at the Visalia Medical Center she had serious height and weight deficiencies and a severe and dangerous diaper rash; the child was badly dehydrated and, among other ailments, was suffering from malnutrition. The doctor was of the opinion that the height and weight deficiencies, the dehydration and malnutrition, and the severe diaper rash all were caused by parental neglect.

Clearly, when the evidence is viewed in the light most favorable to respondent, and when respondent is given the benefit of every legitimate inference, the evidence shows that there was a "demonstrated incapacity" on appellant's part to care for her children and that this incapacity placed Susan in a situation of danger from which any parent could reasonably have foreseen that serious physical damage would have resulted to the child if the danger had been allowed to continue. (*In re B. G.* (1974) 11 Cal.3d 679, 694, 699, fn. 27 [114 Cal.Rptr. 444, 523 P.2d 244]; *Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824, 837 [109 Cal.Rptr. 80, 512 P.2d 304]; *In re Morrow* (1970) 9 Cal.App.3d 39, 54-56 [88 Cal.Rptr. 142]; *In re Raya* (1967) 255 Cal.App.2d 260, 265 [63 Cal.Rptr. 252]; *In re Halamuda* (1948) 85 Cal.App.2d 219, 225-226 [192 P.2d 781]; *In re Gutierrez* (1920) 47 Cal.App. 128, 130 [190 P. 200]; see also *People* v. *Harris* (1966) 239 Cal.App.2d 393, 398 [48 Cal.Rptr. 677]; *People* v. *Beaugez* (1965) 232 Cal.App.2d 650, 658 [43 Cal.Rptr. 28].)

### THE CHILD PROTECTIVE SERVICES

We subscribe to the thesis that all avenues should be explored by the courts, the state and state agencies before a child is declared free from the custody and control of its parents and placed for adoption. ■ A judgment freeing a child from the custody and control of its parents results in the total severance of the natural ties between the parents and the child and amounts to the taking of "a liberty" under the due process clause of the United States Constitution. (*Weinberger* v. *Wiesenfeld* (1975) 420 U.S. 636, 652 [43 L.Ed.2d 514, 527, 95 S.Ct. 1225, 1235]; *Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct.

1208, 1212-1213]; *In re B. G., supra,* 11 Cal.3d 679, 688; *Lois R.* v. *Superior Court* (1971) 19 Cal.App.3d 895, 901 [97 Cal.Rptr. 158].) Accordingly, we embrace the viewpoint that before initiating proceedings to declare a minor free from the custody of its parents under section 232 of the Civil Code, a county welfare department must consider child protective services as a possible solution to the problems at hand and must offer such services to qualified parents if deemed appropriate under the circumstances. Child protective services are designed to preserve the family unit through education, guidance and other social services, and ordinary concepts of human compassion impel the conclusion that the possibility of offering these services to the parents in a "last ditch" effort to save the family should be weighed carefully by social welfare departments before such departments embark on a course which at best offers a drastic and irrevocable solution.[3]

However, we do not accede to the suggestion that the *alleged* failure of the Tulare County Welfare Department to consider or offer child protective services to appellant before instituting this proceeding automatically deprived the superior court of the jurisdiction to entertain or grant the petition to declare Susan free from the custody and control of her mother until the services had been offered and the results evaluated.[4] Such an inflexible rule could seriously jeopardize the welfare of the child to no good purpose. We hold instead that when there has been a failure on the part of a welfare department to consider the advisability of providing child protective services or to offer such services to parents who were qualified to receive them before the department institutes proceedings to have a minor freed from the custody and control of the parents under section 232, the decision as to whether the services should be ordered and the proceeding delayed until the results are evaluated lies within the sound discretion of the superior court. We hold further that in arriving at a decision, the court may, and should, take into consideration whether there were mitigating circumstances for

[3]Section 232 lends itself to this very interpretation. For example, under subdivision (b) of section 232, proceedings to declare a child free from the custody and control of its parents for parental neglect cannot be instituted until the minor has been declared a dependent child of the juvenile court and removed from the custody of its parents for a period of one year; the Legislature obviously intended that every effort be made to reunite the family during the waiting period.

[4]There is evidence in this case that at the time appellant returned to Tulare County to attend the review hearing conducted by the juvenile court, she talked to an employee of the Child Protective Services Division of the Tulare County Welfare Department. It is possible that the services were considered and offered and that appellant refused them.

the department's failure to consider or offer the services,[5] whether the parent or parents were otherwise eligible and qualified to receive them, whether the furnishing of such services would have been appropriate in the first instance and, if so, whether they could offer a solution to the problems presently at hand, and whether the best interests of the child would be seriously jeopardized if the proceedings were delayed unduly.

In the instant case, appellant left California about one year after the child was removed from her custody by the juvenile court, and from that time on was unavailable to receive child protective services from the Tulare County Welfare Department. Before leaving California, appellant had mental and other problems, and there is not a scintilla of evidence to show that her problems have subsided and that she now is better equipped to take care of a child. Also, while appellant may not have abandoned the baby within the ambit of subdivision (a) of section 232, it hardly can be said that she displayed a strong maternal interest toward her daughter. Lastly, during the four years that have elapsed since Susan was declared a dependent child of the juvenile court, she has lived with her foster parents, who wish to adopt her, and the removal of the child from her home now could prove traumatic. It is patent that all of the circumstances should be weighed carefully before the present proceeding is delayed unduly.

Respondent relies upon *In re Jeannie Q.* (1973) 32 Cal.App.3d 288 [107 Cal.Rptr. 646], for the unequivocal proposition that it is not mandatory for a county welfare department to consider or offer child protective services to the parents before instituting proceedings to have a minor declared free from the custody and control of its parents. Respondent's reliance upon that case is misplaced. The *In re Jeannie Q.* case involved proceedings to have minor children declared dependent children of the juvenile court and temporarily removed from the custody of their parents; in declaring that it was not mandatory for the county welfare department to offer child protective services at the home before instituting such proceedings, the court was apprehensive of the inherent dangers involved in such a rule. (See 32 Cal.App.3d at p. 299.) It is significant that the court concluded that before a welfare agency institutes proceedings pursuant to section 600 of the Welfare and Institutions Code to have a minor adjudicated a dependent child of the juvenile court, the agency must *first determine whether child protective*

---

[5]For example, child protective services are voluntary (see Welf. & Inst. Code, § 16505), and the welfare department should be permitted to present evidence that if the services had been offered they would not have been accepted.

*services are appropriate and can be offered to eligible parents without endangering the welfare of the child in the home.* (See 32 Cal.App.3d at pp. 299-300.) It is also significant that the court further concluded that before removing, even temporarily, a child from the custody of its parents under section 726 of the Welfare and Institutions Code, the juvenile court should make its own evaluation and determine whether child protective services should be ordered. (See 32 Cal.App.3d at pp. 301-302.)

### The Present Conditions

■ We note that under subdivision (b) of section 232, before a petition, to declare a minor free from the custody and control of its parents because of parental neglect may be filed in the superior court, the minor must be a dependent child of the juvenile court whose parent or parents have been deprived of the custody of the child for a period of at least one year. While we stated earlier that sufficient evidence was presented in this case to support an implied finding of parental neglect, we observe now that no evidence was presented to show that the factors which gave rise to the parental neglect in the first instance still persisted at the time of the hearing in the superior court, even though such evidence readily was attainable through social welfare agencies and similar sources located in the Wichita, Kansas area where appellant was residing. (See *In re Zimmerman* (1962) 206 Cal.App.2d 835, 843-845 [24 Cal.Rptr. 329]; *In re Cardenas* (1961) 194 Cal.App.2d 849, 855 [15 Cal.Rptr. 238]; cf. *Prouty* v. *Prouty* (1940) 16 Cal.2d 190, 194 [105 Cal.Rptr. 295].) Upon retrial, this problem, as well as the problem which has arisen as a result of the welfare department's alleged failure to offer appellant child protective services, should be resolved by the trial court. As was said in *In re Morrow, supra,* 9 Cal.App.3d 39, 55-56: ". . . the parent was entitled to have the circumstances leading to the earlier order reviewed in light of subsequent events, and with consideration of the nature of the order sought in the second proceedings. . . . [¶] . . . It is reasonable to consider under subdivision (b) [of section 232] whether the conditions which gave rise to the cruelty or neglect still persist."

### The Specific Finding Issue

■ Appellant argues that the trial judge committed reversible error in freeing Susan from the custody and control of appellant without making the specific finding mandated by section 4600 of the Civil Code.

(*In re B. G., supra,* 11 Cal.3d 679, 693-699; *Guardianship of Marino* (1973) 30 Cal.App.3d 952, 957-959 [106 Cal.Rptr. 655].) This section reads in pertinent part as follows: "Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child."

We agree with appellant's contention that the specific finding requirement of section 4600 embraces an order and judgment declaring a minor child free from the custody and control of the parents for the purpose of placing the child for adoption. (See *In re T. M. R., supra,* 41 Cal.App.3d 694, 703-704.) Prior to the enactment of the Family Law Act in 1969, the pivotal question in child custody proceedings was the unfitness of the parents. With the enactment of the Family Law Act, the standard was changed, and now the court, before awarding custody of a minor to a nonparent must find that an award to the parent would be "detrimental to the child." As our Supreme Court explained in *In re B. G., supra,* 11 Cal.3d 679, 695-696, California has at least eight separate proceedings in which child custody questions can be litigated, and the last paragraph of section 4600 fulfills the desirable objective of a uniform rule. In that case the Supreme Court observed in footnote 25 on page 696 that:

"In most juvenile court dispositional hearings custody awards are governed by Welfare and Institutions Code section 726, which states that: '. . . no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts:

" '(a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor.

'(b) That the minor has been tried on probation in such custody and has failed to reform.

'(c) That the welfare of the minor requires that his custody be taken from his parent or guardian.'

"The language of section 726 should be interpreted in *pari materia* with the requirement of section 4600 that in any proceeding in which

custody is at issue, an award to a nonparent against a parent claim requires a finding of detriment. Under this interpretation, subdivisions (a) and (b) of section 726 present specific instances of detriment justifying an award of custody to a nonparent; the term 'welfare of the minor' in subdivision (c) encompasses a requirement that an award of custody to the nonparent rests upon a finding that parental custody would be detrimental."

Nevertheless, it seems very clear that it can be presumed that the trial court made the requisite finding under section 4600 if the record shows that in awarding custody of a minor to a nonparent the court used the proper standard. Thus, in *Chaffin* v. *Frye* (1975) 45 Cal.App.3d 39, 44-45 [119 Cal.Rptr. 22], the lower court awarded custody of two minor children to the mother's parents without making an express finding of detriment pursuant to section 4600. The appellate court upheld the judgment because the pleadings and the evidence presented at the hearing disclosed that the only question presented to the trial court was whether an award of custody to the mother would be detrimental to the children and an award of custody to the grandparents was required to serve the best interests of the children.

We believe that the same can be said of a proceeding brought under subdivision (a) or subdivision (b) of section 232 of the Civil Code where, as here, the proceeding is predicated entirely upon "specific instances of detriment." (See *In re B. G., supra,* 11 Cal.3d 679, 696, fn. 25.) Certainly, evidence which supports an implied finding that the parents abandoned or neglected their minor child to the extent that the child should be declared free of their custody and control, and that the conditions which gave rise to the neglect in the first instance still persisted at the time of hearing, necessarily embodies a finding that an award of custody to the parents would be detrimental to the child and that an award of custody to a nonparent would serve the best interests of the child. However, the better practice would be to make the statutory finding even though it was not requested.

The order and judgment declaring Susan M. free from the custody and control of appellant and referring her for adoption placement is reversed, with directions to the trial court, on the basis of the evidence previously presented and such additional evidence as either side may wish to present, to resolve the issues discussed herein and to

enter an order and judgment in conformity with the views expressed herein.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

A petition for a rehearing was denied December 26, 1975, and respondent's petition for a hearing by the Supreme Court was denied January 21, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.