129 Cal.App.3d 894 (1982)
181 Cal. Rptr. 188
In re ROBERT J., a Minor.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Petitioner and Respondent,
v.
CATHERINE C., Objector and Appellant.
Docket No. 49166.
Court of Appeals of California, First District, Division One.
March 8, 1982.
*897 COUNSEL
Nancy B. Miller, under appointment by the Court of Appeal, for Objector and Appellant.
William Gorenfeld, Charles Bush and Edward E. Rockman as Amici Curiae on behalf of Objector and Appellant.
Richard J. Moore, County Counsel, and Dianna Thurston, Deputy County Counsel, for Petitioner and Respondent.
OPINION
GRODIN, J.
Pursuant to a petition filed June 22, 1979, by the County of Alameda under Civil Code section 232, subdivision (a)(7),[1] the trial *898 court rendered judgment declaring Robert J., a minor, free from his natural mother's custody and control. Appealing from the judgment, she contends that she was denied due process of law because county authorities failed to notify her of the legal consequences flowing from Robert's placement in a foster home; that the county failed to meet its burden of proof under section 232, subdivision (a)(7); and that the trial court erred in failing to consider alternatives to termination, or at least in continuing her visitation rights. In this latter connection, she challenges the constitutionality of the statutory scheme insofar as it precludes continuation of visitation rights after termination. We will affirm.

Factual and Procedural Background
Evidence presented by the county at the termination hearings reflects the following. Robert was born on April 16, 1968. He has never known his natural father, who disappeared about that time. His mother, appellant Catherine C., is a mentally retarded person, who functions at the level of an immature adolescent. She has always lived with her mother, Beatrice C., and has been dependent upon her for advice and guidance. She has been only minimally involved in raising Robert, that task being assumed by the grandmother.
When Robert lived with his mother and grandmother, his school did extensive testing and placed him in special classes. There was no cooperation from the mother, and the grandmother was abusive toward school personnel. His behavior became so disruptive that the school arranged for him to have a home tutor and in December 1975, when Robert was seven years old, his mother requested out-of-home placement for Robert through the Alameda County Social Services Agency. Robert was declared a dependent of the juvenile court on March 23, *899 1976, and returned to his mother under supervision. Two months later, however, the grandmother again called the police to ask that the minor be placed elsewhere, as she and the mother were no longer able to cope with his behavior. A supplemental petition was filed, and on May 28, 1976, Robert was placed under the supervision of the juvenile court in the foster home of Mr. and Mrs. S., where he has remained continuously since that time.
Upon first arriving at the foster home, Robert exhibited serious behavior problems, and was placed in a special class. His teacher observed improvements in a rather short period, which she attributed in part to the support Robert was receiving from his foster parents.
Robert continued to evidence serious behavior problems for the first year of foster care. In October 1976 he began seeing a child psychiatrist, Dr. Ging-Long Wang, twice a week. Dr. Wang's initial diagnosis was "severe anxiety reaction" with some features of thought disorders and a preoccupation with violence. Dr. Wang has continued to treat Robert, seeing him on a twice weekly basis until December 1978, and on a weekly basis since February 1979. Dr. Wang's psychiatric prognosis at the time of the hearing was "fair," and he recommended continued therapy for Robert. He opined that a return of Robert to his mother would be psychologically harmful.
When Robert was placed in his mother's home in 1976, she failed to cooperate with the social services agency in arranging for an examination for developmental delay for Robert, but again requested that he be removed from her home because she was unable to handle him. On June 17, 1976, the court ordered that the mother obtain counseling for herself prior to reunification with Robert, which she failed to do until the spring of 1977. Following the recommendation in May 1977 of her therapist, John Wells, that Robert not be returned to her care, she refused further therapy. At the annual reviews of dependency in May 1977, April 1978, and March 1979, the court continued to order counseling as a condition to reunification, but the mother did not engage in any kind of therapy. Counseling was arranged for her by the social services agency with Dr. Phillip Wroblewski, a clinical psychologist, but she did not attend any session. The mother was informed of the possibility of an action for termination of her rights under Civil Code section 232 in March 1979, but she continued to fail to obtain counseling.
*900 Appellant and her mother visited Robert approximately every six weeks since he has been in foster care. All visits during dependency were supervised by a child welfare worker until August 1978, and then again from June 1979, to the time of the hearing. Robert's response to his mother during these visits has been negligible in that they have almost no verbal communication and he exhibits little reaction to her arrival or departure. He has developed close family ties with Mr. and Mrs. S. and their children and desires to have them adopt him. Mr. and Mrs. S. desire to adopt him.

Discussion

I. PROCEDURAL DUE PROCESS
(1) Appellant contends that she should have been notified by county authorities at the time she acceded to Robert's placement in a foster home that continuation of such placement for two years could lead to a termination petition under Civil Code section 232, subdivision (a)(7).
We find no support in the authorities for such a contention. In re B.G. (1974) 11 Cal.3d 679, 688-689 [114 Cal. Rptr. 444, 523 P.2d 244], recognized that a parent's interest in the companionship, care and management of his children is "among the most basic of civil rights," requiring "adequate notice and an opportunity to be heard" prior to termination; but that case, and the others upon which appellant relies (e.g., In re Rose G. (1976) 57 Cal. App.3d 406, 421 [129 Cal. Rptr. 338]; Lois R. v. Superior Court (1971) 19 Cal. App.3d 895, 901-902 [97 Cal. Rptr. 158]) focus upon the proceedings leading to termination, rather than notice or advice concerning the legal consequences of parental acts which may contribute to that result. Appellant concedes she received notice of the proceedings, as required by statute. (Civ. Code, § 235.)
And, upon analysis, we find appellant's contention to be lacking in merit. Placement in a foster home for two years does not result in automatic termination of parental custody and control under section 232, subdivision (a)(7); it merely provides the occasion for further inquiry. To support a termination order, the court must further find "by clear and convincing evidence that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have *901 failed during such period and are likely to fail in the future, to ... (i) Provide a home for the child; (ii) Provide care and control for the child; and (iii) Maintain an adequate parental relationship with the child." Appellant contends that if she had been aware that placement in a foster home for two years might lead to termination, she would have been more diligent in rehabilitating herself as a parent. Whatever the merits of such a contention in the abstract, it finds little support in the facts of this case. Even after appellant was informed of the potential section 232 proceeding, some three months before the proceeding was instituted, she continued to fail to obtain counseling as ordered by the court. We find no due process violation here.

II. SUFFICIENCY OF THE EVIDENCE
(2a) Appellant contends that the county "failed to meet its burden of proof," i.e., to demonstrate by clear and convincing evidence the existence of facts requisite to an order under section 232, subdivision (a)(7). (3) The contention misstates the function of appellate review, recently confirmed in this context by the Supreme Court: "`[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence  that is, evidence which is reasonable, credible, and of solid value  such that a reasonable trier of fact could find [that termination of parental rights is appropriate based on clear and convincing evidence].'" (In re Angelia P. (1981) 28 Cal.3d 908, 924 [171 Cal. Rptr. 637, 623 P.2d 198].) (2b) It was the trial court's duty to determine whether the county met its burden of proof; it is our duty to determine whether there is substantial evidence to support the trial court's findings that it did.
We have reviewed the record as required, and find substantial evidence to support the trial court's determination. While the evidence of parental failure is in part "circumstantial," in the sense that there is little direct evidence of what went on in the home before Robert was removed from it, that does not render such evidence insubstantial, nor preclude the trial court from accepting it as "clear and convincing" in accord with the statutory standard. And while certain of the evidence comes from the report of the social services agency, and is to that extent hearsay, appellant's objection to such evidence on that ground, renewed on appeal, is without merit. Civil Code section 233 mandates *902 receipt and consideration of such a report,[2] and "[i]t has been held that `the written report mandated by the statute is admissible over a general hearsay objection so long as a meaningful opportunity to cross-examine and to controvert the content of the report is afforded.' [Citations.]" (In re Angelia P., supra, 28 Cal.3d at p. 926.) The welfare worker who prepared the report appeared at the hearing; she was subject to full cross-examination; and appellant was not denied the opportunity to controvert any aspect of the report. Appellant's contention that the report contained "irrelevant" material is likewise without merit; there is no suggestion in the record that the trial court relied upon any irrelevant material. Finally, the trial court's unchallenged findings, based upon live testimony, stipulated testimony, or undisputed facts, are independently sufficient to support the trial court's determination.[3]
Indeed, appellant's position at the hearing in effect conceded that she was at that time, and for some indefinite period in the future would be, incapable of providing the requisite home, care, and control for the child, or of maintaining an adequate parental relationship with him. Her counsel stated at the outset of the hearing that she did not oppose continued foster care. Her principal contention then was, and now is, that the trial court erred in terminating parental custody because "there was no evidence presented to indicate that [Robert's] return would never be possible without harm to Robert." She insists that the trial court should have considered, and adopted, the alternative of maintaining the status quo indefinitely, with parental visitation, meanwhile providing for additional services, such as counseling, designed to teach appellant better parenting skills, so as to facilitate Robert's eventual return.
*903 A similar contention was made, and rejected, in In re Angelia P., supra. The court in that case made reference to the fact that section 232, subdivision (a)(7) permits the parents "`two years, in which to rehabilitate themselves to a position whereby they can properly support this most fundamental responsibility. Such an accommodation, inherent in the structuring of section 232, affords the fullest opportunity to the parents for exercise of their rights not inconsistent with the ultimate best interests of the child.'" (28 Cal.3d at p. 923, quoting from In re Carmaleta B. (1978) 21 Cal.3d 482, 491-492 [146 Cal. Rptr. 623, 579 P.2d 514].) The court then stated: "Here the trial court properly considered alternatives and was fully free to decide that termination was appropriate. Angelia had been in foster care for almost four years, yet her parents, after having rejected an earlier return, requested an even further delay until some uncertain future date when, if all went well, Angelia could be returned to them. Such uncertainty conflicts with the intent of section 232 to afford children during their formative years a permanent, secure, and stable environment. [Citations.]" (In re Angelia P., supra, 28 Cal.3d at p. 923.)
Robert had lived with his foster parents for three years at the time the instant petition was filed. His psychiatrist indicated it would be harmful to the child to be returned. There was no evidence that this situation was likely to change in the near future. On the contrary, "`[p]ast conduct is relevant on the issue of future fitness, although it is of course not controlling.'" (In re Angelia P., supra, 28 Cal.3d at p. 925, quoting from In re Terry D. (1978) 83 Cal. App.3d 890, 900 [148 Cal. Rptr. 221].) The record reflects that the trial court considered alternatives to termination.[4] Evidence that Robert's mother had failed to fulfill her parental obligations in the past, and had consistently rejected the counseling offered her, even after she became aware of the consequences of *904 rejection, provided a substantial basis for the trial court's conclusion that rehabilitation was unlikely, and that the time had come for legal intervention to assure the "permanent, secure, and stable environment" which it is this state's policy to afford.

III. VISITATION RIGHTS.
(4) Appellant contends that even if the section 232 order was otherwise valid, "the trial court erred in failing to continue appellant's visitation rights." It does not affirmatively appear from the record that this issue was presented to the trial court, and for that reason we would not normally consider it on appeal. The parties have addressed it in their briefs, however, as a question of law relating to the trial court's jurisdiction to award visitation in this situation; and since that jurisdiction, if it existed, would be of a continuing nature we deem it appropriate in the interests of judicial economy to consider and decide it now.
Whatever ambiguity may have existed previously on this question (cf. In re Marriage of O'Connell (1978) 80 Cal. App.3d 849 [146 Cal. Rptr. 26]), it is now clear that "the very essence of [a section 232] proceeding is the complete and final legal termination of [the parental] relationship." (In re Angelia P., supra, 28 Cal.3d at pp. 915-916.) The Legislature in 1980 added to chapter 4, section 232.6, which states: "The purpose of this chapter is to serve the welfare and best interests of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from his or her life. A declaration of freedom from parental custody and control pursuant to this chapter terminates all parental rights and responsibilities with regard to the child." (Stats. 1980, ch. 1229, § 3, p. 4153, italics added.) It is difficult to conceive of more precise, or emphatic, language.
(5) Appellant, joined by the Legal Aid Society of Marin County as amicus curiae, argue that if the current statutory framework for termination of parental rights does not permit the maintenance of reasonable visitation in appropriate cases, then the current statutory scheme is overbroad and unconstitutional. Pointing to judicial recognition that parenting is a "fundamental right" (e.g., In re Angelia P., supra, 28 Cal.3d 908, 916, and cases cited therein; see also, Roe v. Wade (1973) 410 U.S. 113, 152-153 [35 L.Ed.2d 147, 176-177, 93 S.Ct. 705]), and the proposition that any interference by the state with that right should be accomplished in the least intrusive fashion (e.g., In re Carmaleta B., *905 supra, 21 Cal.3d 482, 489), they argue that if a child's welfare can be fully protected by solely terminating a parent's right to custody, then any interference with parental rights beyond custody should be deemed unconstitutional, presumably as a denial of due process of law under the federal and state Constitutions. The argument is bolstered by citations to various psychological and sociological studies which emphasize the importance of the maternal bond (Rutter, The Qualities of Mothering, Maternal Deprivation Reassessed (1972) p. 29); and the benefits which a child in a foster home may derive from visitation by his natural parents (Weinstein, The Self Image of the Foster Child (1960) p. 17; Littner, Natural Parents and the Child in Placement (1970) 54 Child Welfare pp. 175-180). They conclude that the Legislature's "all-or-nothing" approach, as they call it, leaves no room for individual determination as to the benefit or detriment which may result from continued visitation, and for that reason cannot pass constitutional muster.
Appellant's constitutional argument, while impressive (cf. In re Sarah H. (1980) 106 Cal. App.3d 326, 332 [165 Cal. Rptr. 61], conc. opn. by Reynoso, J.), is not persuasive. The Constitution does not enshrine particular psychological or sociological theory, any more than it does particular economic theory. There is a respectable body of expert opinion which supports complete severance of parental ties upon termination in order to provide stability and continuity to the child's new home (e.g., Goldstein et al., Beyond the Best Interests of the Child (1973) pp. 37-38), and the Legislature was entitled to accept that view. As the Supreme Court has recently emphasized, "`Here we are in the arena of policy, but not properly judicial policy.... [T]hese are social problems which the Legislature has attempted to deal with over the years as it deems best, attempting to balance the interest of the children with that of the parents.'" (In re Angelia P., supra, 28 Cal.3d at p. 922, quoting from In re Terry D., supra, 83 Cal. App.3d at p. 897.)
Moreover, the statutory scheme, viewed in its totality, does not establish an "all-or-nothing" approach. It leaves open various alternatives, short of termination, which would allow for the continuing exercise of parental rights. It treats termination as an ultimate option, to be avoided if possible. Once that option is reached, however, the Legislature has chosen to make it complete. To put the matter differently, the Legislature has chosen to make available one legal status that does not provide *906 for any continuing parental rights. We find nothing unconstitutional in that choice.
The judgment is affirmed.
Racanelli, P.J., and Goff, J.,[*] concurred.
Appellant's petition for a hearing by the Supreme Court was denied May 20, 1982. Broussard, J., did not participate therein.
NOTES
[1] The section reads: "(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions: ... (7) Who has been cared for in one or more foster homes, residential facilities licensed pursuant to Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code, or health facilities licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code, under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds by clear and convincing evidence that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to do the following: (i) Provide a home for the child; (ii) Provide care and control for the child; and (iii) Maintain an adequate parental relationship with the child. [¶] Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period."
[2] Section 233 calls for the juvenile probation officer or the county department which administers the public social services program to investigate the circumstances relevant to a section 232 petition and to "render to the court a written report of the investigation with a recommendation to the court of the proper disposition to be made in the action...." The section provides: "The court shall receive such report in evidence and shall read and consider the contents thereof in rendering its judgment" (§ 233, subd. (d)).
[3] Of the facts recited in this opinion under the heading "Factual and Procedural Background," all but the first three paragraphs are taken from the trial court's findings. Robert's mother testified at the trial, and to that extent the court was in a position to evaluate her personality and characteristics. The history of the requests for out-of-home placement of Robert, and his placement in a foster home, as discussed in the second paragraph, is undisputed.
[4] The court was aware of, and considered, appellant's general contention that the status quo should be maintained, as well as her more specific contention that increased protective services be provided her in order to facilitate reunification. Regarding the latter, the court expressed reservation as to whether child care services to the mother had been adequately provided in the past, and it asked counsel into chambers to discuss "some alternatives that I might have in mind." Following the discussion, which was not reported, the court announced its decision.

An increase in protective services is an alternative to be considered in termination cases (In re Susan M. (1975) 53 Cal. App.3d 300, 311 [125 Cal. Rptr. 707]), but it is not mandatory (In re Rose G., supra, 57 Cal. App.3d 406, 422.) Regarding that alternative here, the court properly considered what it characterized as "the lack of efforts or minimal efforts which have been made by the mother to prepare herself to receive the child back."
[*] Assigned by the Chairperson of the Judicial Council.