177 Cal.App.3d 754 (1986)
225 Cal. Rptr. 460
In re MARK V. et al., Minors.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner and Respondent,
v.
MARK G.V., Objector and Appellant.
Docket No. F004218.
Court of Appeals of California, Fifth District.
January 31, 1986.
*755 COUNSEL
Nancy Marsh, under appointment by the Court of Appeal, for Objector and Appellant.
Floyd R.B. Viau and Max E. Robinson, County Counsel, and Vincent J. McGraw, Deputy County Counsel, for Petitioner and Respondent.
Linda A. Luke, under appointment by the Court of Appeal, for Minors.
OPINION
HANSON (P.D.), J. 

FACTS
We are concerned with the fate of three children, Mark V., Athena V., and Erica H. Erica is the half-sister of Mark and Athena. Appellant is the *756 natural father (Mark G.V.) of two of the children  Mark and Athena. On April 18, 1984, the court issued an order terminating the parental rights of appellant as to Mark and Athena and an appeal was filed.
During a time when appellant, Jacquelyn (Jackie), the mother of the three children, and Jackie's foster sister, Olga, lived with the children in Fresno, Jackie died as a result of stab wounds inflicted by appellant. The murder occurred early in the morning in a bedroom of the home where appellant resided while the children were asleep in another room; the parents were arguing. Following the attack, appellant voluntarily called the police and waited for their arrival. Appellant was convicted of murder in the second degree.
The children live with Carrie and Tony Q. Jackie was Carrie Q.'s niece. The Q.'s and the children are very attached to one another and live as a family. The Q.'s are supportive of appellant's efforts to maintain contact with his children. Appellant writes weekly and sees the children when the Q.'s take them to visit appellant at state prison.
All the parties involved, including appellant, agree the children should remain with the Q.'s. Although the Q.'s would like to have legal jurisdiction over the children, they agree the children should maintain a relationship with appellant. The Q.'s do not state a preference for either guardianship or adoption; they are concerned that the ultimate goals be met in terms of maintaining a home for the children. The actual petitioner is the Fresno County Department of Social Services.
At the time of trial, the children were unaware of the circumstances surrounding the death of their mother.

DISCUSSION

I

Sufficient Evidence to Terminate Parental Custody (Civ. Code, § 232, Subd. (a)(4).)

Appellant contends the evidence does not support the termination of his right to the parental custody of Mark and Athena pursuant to Civil Code section 232, subdivision (a)(4), which provides as follows: "An action may be brought for the purpose of having any child under the age of 18 years declared free from the custody and control of either or both of his or her parents when the child comes within any of the following descriptions:
*757 ".... .... .... .... .... .... .
"(4) ... Whose parent or parents are convicted of a felony, if the facts of the crime of which the parent or parents were convicted are of a nature so as to prove the unfitness of the parent or parents to have the future custody and control of the child." (Italics added.)
As is required to award custody of a minor to a person not the parent without the consent of either parent, the court found that an award of custody to a parent would be detrimental to the child, and the award to a nonparent is required to serve the best interests of the child. (In re B.G. (1974) 11 Cal.3d 679, 695 [114 Cal. Rptr. 444, 523 P.2d 244].) The legislative preference for parental custody requires this showing of detriment to the child if kept in parental custody. (Id., at p. 698; see also Civ. Code, § 4600.) (1) As a result, when termination of parental custody is sought pursuant to section 232, subdivision (a)(4), two elements must be established: (1) that the facts underlying the felony of which the parent is convicted demonstrate an unfitness for future custody or control of the child; and (2) that an award of custody to the parent would be detrimental and not in the best interests of the child.
In establishing these elements, the trial court must base its findings upon clear and convincing evidence. (In re Heidi T. (1978) 87 Cal. App.3d 864, 870 [151 Cal. Rptr. 263].) On review, we are limited to a determination of whether substantial evidence supports the conclusions reached by the trial court while using the "clear and convincing evidence" standard. (Id., at p. 871.)
On the day of Jackie's death, she and appellant engaged in numerous arguments. Appellant thought Jackie was caring for the children improperly, and accused Jackie of having an affair with another man. Appellant drank throughout the day. He delivered a dinner Jackie prepared for the man with whom she was having an affair. According to appellant, Jackie failed to prepare a meal for her own children.
During the day, appellant left the house numerous times to obtain beer. Each time he returned with a "large" bottle of beer, and consumed it. On his final trip, appellant returned with a bottle of wine. Olga, who was in the living room, noticed appellant went into the kitchen to get a glass before joining Jackie in the bedroom. In the bedroom, appellant and Jackie again argued over dinner and the care of the children. At some point during this argument appellant attacked Jackie with a knife. He stabbed her at least twice then threw the knife at her. The knife was found later in the wall above Jackie's head. Bloodstains located around the room indicated that *758 Jackie tried to get away from appellant. The children were asleep in another room throughout the attack.
After the assault, appellant telephoned the police and waited for them to arrive. He later told an officer he remained in the house because the children were asleep. He also told the officer he was sorry about what he had done, but acted out of anger because Jackie had been "whoring around," and that he felt calm after the attack. Appellant was convicted of second degree murder.
In re James M. (1976) 65 Cal. App.3d 254, 265-266 [135 Cal. Rptr. 222], held that a conviction for second degree murder did not prove a person unfit as a parent as a matter of law.[1] In James M., Sergio M., the father, learned his former wife, Judith, planned to move to Alaska with her new husband. Although they had separated and sought a divorce, the defendant believed Judith was still committed to him. Judith, in fact, had suggested the possibility of reconciliation, and after their separation, Sergio bought a house in both their names; he also gave Judith money whenever she asked. After hearing about the planned move to Alaska, Sergio confronted Judith and asked her to return to him with the children. When she refused, they argued and Sergio suddenly stabbed Judith 22 times with a knife. Sergio voluntarily handed the knife to a person who arrived at the crime scene. The trial court found these facts insufficient to support a petition for termination of parental custody. (Id., at p. 265.) The Court of Appeal affirmed.
Although the facts in the instant case may seem similar to those in James M., two significant differences exist. The children in James M. were not present at the crime scene. The three children in this case were asleep in the next bedroom. The court in James M. specifically stated that a killing accomplished in the presence of a child was a circumstance that would indicate the unfitness of a parent. (65 Cal. App.3d at p. 266.) Here, although the children were not in the same room, they were close enough to hear any screams or cries if awakened during the assault. Although in James M. the trial court denied the petition to terminate, the appellate court did not reweigh the evidence and find the facts of the murder insufficient to terminate parental custody. Instead, the court applied the substantial evidence test and determined that on the facts, the trial court reasonably could find the evidence did not constitute the level of neglect necessary to support a petition for termination of parental custody. (Id., at pp. 265-266.) We apply the substantial evidence test here and find the evidence reasonably supports the trial court's decision to terminate parental custody.
*759 (2) We affirmed a judgment terminating parental custody in In re Geoffrey G. (1979) 98 Cal. App.3d 412 [159 Cal. Rptr. 460] on very similar facts. While drunk, the defendant was engaged in an argument with his wife when he grabbed her and "accidentally" strangled her to death. We determined that because of the violent nature of the felony, coupled with the use of alcohol, a sufficient basis existed to uphold a finding of unfitness to parent.[2]
In Geoffrey G., the court noted that although parenting is a fundamental right, the decision to terminate parental custody and control is within the sound discretion of the trial court: "`... [W]here a trial court has discretionary power to decide an issue, a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'" (Id., at p. 421.)
The present facts come within the description of section 232, subdivision (a)(4). Even though the actual murder, in and of itself, provides no proof that appellant will harm the children intentionally, as in Geoffrey G., the violent nature of the felony, coupled with the use of alcohol, is sufficient to uphold the finding of unfitness to be a parent. The facts of the crime supply a basis for the court to draw a reasonable inference that appellant is an unfit parent.[3] We affirm this determination in conjunction with our consideration of a second element.
It also must be proved that termination is in the best interests of the child and maintaining parental custody would be detrimental to the child. (In re B.G., supra, 11 Cal.3d 679, 695.) The purpose of the statute is to protect the children, not to punish the criminal offender. (In re Sherman M. (1974) 39 Cal. App.3d 40, 44 [113 Cal. Rptr. 847].) Under the facts, the court properly found an award of custody to the father would be detrimental to the children and the award to the nonparents with whom the children have found a home would serve the best interests of the children. (In re B.G., supra, 11 Cal.3d at p. 695.)
Penelope Lyles, the social worker, testified that returning custody to appellant would be detrimental to the children because the father had no home to offer and because the children had developed a close relationship with *760 their substitute parents. Lyles concluded that adoption rather than guardianship was the better alternative because it offered the children more stability. The earliest possible date appellant will be released from prison is 1992. Mark will be 15 years old at that time.[4]
Appellant desires to maintain custody for the reason that his son will bear the family name. Appellant writes to the children weekly, but he has seen them only a few times since his imprisonment. Appellant testified he would like the three children to remain together and therefore approves the guardianship arrangement. In fact, he testified he would probably leave the children in the care of the present guardians if he were released before the children reached majority. Again, his main concern seems to be that his son, Mark, keep the family name.
In the report submitted by the family court services, it is noted that all the parties, including appellant, agree the children should remain in the present home. The report stresses that more permanence in terms of custody over the children will be necessary to ease their adjustment when they are told the facts surrounding their mother's death. The author of the report stated the children need to believe nothing could change in order to feel secure. Although the report recommends the termination of appellant's parental rights, it does not suggest all ties with the father should be severed. In fact, the author suggests that a continuing relationship with the father will help aid the children's understanding of the events surrounding their mother's death.
The findings of social services regarding the need for permanence and stability, the fact appellant will not be released from prison until at least 1992, and the relationship the children have developed with their caretakers, constitute substantial evidence to support the determination that an award of custody to appellant would be detrimental and not in the best interests of the children. The court's conclusion is reasonable on the facts presented.
This determination also is consistent with the legislative intent embodied in the laws affecting dependent children. Welfare and Institutions Code section 366.25 addresses the permanent placement of dependent children and expresses the desire to provide stable and permanent homes for them instead of prolonged temporary foster care. (Welf. & Inst. Code, § 366.25, subd. (a).) Under section 366.25, if a substantial probability does not exist that a child will be returned to his or her parents within a six-month period, the *761 Legislature has directed that the court must develop a permanent plan for the child. (Welf. & Inst. Code, § 366.25, subd. (d).) The first option states that if the child is found to be "adoptable," proceedings shall be instituted to terminate parental custody and control unless the parent has maintained regular visitation and the minor would benefit from this contact, a minor 12 years of age or older objects to termination, or the foster parents are unable to adopt the minor but are willing to provide a stable environment and removal of the minor from the physical custody of the foster parents would be seriously detrimental to the emotional well-being of the minor. Because of the desire to give the children a sense of security and stability, guardianship is considered only if a determination is made that the children are not "adoptable or one of the above conditions applies." (Welf. & Inst. Code, § 366.25, subd. (d)(2).)
The only condition of which we are aware possibly preventing adoption in the instant case is if the parent maintains regular visitation and contact with the children, and continuing this relationship would be beneficial for the children. Although the social services report specifies that such continued contact would benefit the children, it is doubtful under the circumstances that weekly letters and infrequent visits to the prison fully satisfy this condition.
Appellant in his reply brief cites In re Susan M. (1975) 53 Cal. App.3d 300, 310-311 [125 Cal. Rptr. 707], for the proposition that a superior court hearing a petition to terminate parental custody must consider whether alternatives to total severance exist. However, Susan M. was decided prior to the enactment of Welfare and Institutions Code section 366.25, indicating a preference for permanent placement. Social services considered the possibility of continuing the guardianship arrangement, but concluded adoption was a preferable alternative because it offered the children more stability. The agency determined that under the permanent relationship, the children would not fear their living arrangements or that family ties would be disrupted in the future. The report noted the importance of this concern because the children have not been informed how their mother died.
While in his reply brief appellant attempts to raise for the first time a possible constitutional issue concerning a preference for adoption over legal guardianship, we need not address the issue raised this late in the appellate process. (Hecht v. Smith (1960) 183 Cal. App.2d 723, 728 [7 Cal. Rptr. 209].) However, we quote in answer to appellant's reliance upon In re Sarah H. (1980) 106 Cal. App.3d 326, 332 [165 Cal. Rptr. 61], Justice Grodin's statement in In re Robert J. (1982) 129 Cal. App.3d 894, 905 [181 Cal. Rptr. 188]: "The Constitution does not enshrine particular psychological or sociological theory, any more than it does particular economic theory. *762 There is a respectable body of expert opinion which supports complete severance of parental ties upon termination in order to provide stability and continuity to the child's new home (e.g., Goldstein et al., Beyond the Best Interests of the Child (1973) pp. 37-38), and the Legislature was entitled to accept that view. As the Supreme Court has recently emphasized, `"Here we are in the arena of policy, but not properly judicial policy.... [T]hese are social problems which the Legislature has attempted to deal with over the years as it deems best, attempting to balance the interest of the children with that of the parents."' (In re Angelia P., supra, 28 Cal.3d at p. 922 [171 Cal. Rptr. 637, 623 P.2d 198], quoting from In re Terry D., supra, 83 Cal. App.3d at p. 897 [148 Cal. Rptr. 221].)"
The evidence supports the finding that the termination of parental custody would be in the best interests of the children. Appellant will not be released from prison until 1992. The state's preference for permanence, and the relationship the children have developed with their foster parents, combined with the facts underlying the second degree murder conviction, provide substantial evidence to support the termination order of the court.
As only one basis for terminating parental custody under Civil Code section 232 is required, we affirm the judgment and find it unnecessary to discuss remaining issues concerning Civil Code section 232, subdivision (a)(3). Under that subdivision, an action may be brought to have a child declared free from the custody and control of his parent upon a finding of moral depravity if the child is a dependent child of the juvenile court and the parent has been deprived of the child's custody continuously for one year immediately prior to the filing of a petition, with certain conditions.
The judgment is affirmed.
Franson, Acting P.J., and Castellucci, J.,[*] concurred.
Appellant's petition for review by the Supreme Court was denied May 7, 1986. Reynoso, J., was of the opinion that the petition should be granted.
NOTES
[1] The James M. court concluded certain felonies, without more, could prove a person unfit to have the custody of his or her minor children. An example provided by the court was child abuse. (65 Cal. App.3d at pp. 265-266.)
[2] The defendant in Geoffrey G. had a prior arrest record which included two convictions for drunk driving (1966 and 1967), a minor traffic offense, one incident of public intoxication, and one conviction for possession of marijuana. (98 Cal. App.3d at p. 416.)
[3] Unlike the defendant in Geoffrey G., appellant does not have a lengthy record showing alcohol-related offenses. Appellant has a 20-year-old conviction for being drunk and disturbing the peace, and a 10-year-old arrest involving a fight with his cousin while drunk. No charges were ever brought on this latter offense because it was determined he was acting in self-defense.
[4] The James M. court indicated that one factor that may affect the decision to terminate parental custody is the length of the uncompleted sentence and whether it will deprive a child of a normal home for a period of years. (In re James M., supra, 65 Cal. App.3d at p. 266.)
[*] Assigned by the Chairperson of the Judicial Council.